# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ELIZABETH HALPER-ASEFI;
MARY CONOBOY; and NESTOR
MONTE, JR., on behalf of themselves
and others similarly situated,

      Plaintiffs,

v.

MADONNA LOUISE CICCONE; LIVE
NATION WORLDWIDE, INC.; LIVE
NATION MTOURS (USA), INC.; and
LINCOLN HOLDINGS, LLC D/B/A
MONUMENTAL SPORTS &
ENTERTAINMENT,

      Defendants.

_____/

Case No._____

**CLASS ACTION COMPLAINT**

(JURY TRIAL DEMANDED)

      Plaintiffs, Elizabeth Halper-Asefi, Mary Conoboy, and Nestor Monte, Jr., as

Class Representatives, on behalf of themselves and all others similarly situated, by

and through their undersigned attorneys, file their complaint against Defendants,

Madonna Louise Ciccone, individually, Live Nation Worldwide, Inc., Live Nation M

Tours (USA), Inc., and Lincoln Holdings, LLC d/b/a Monumental Sports &

Entertainment, and aver as follows:

## **INTRODUCTION**

This class action complaint is filed by three consumers who were deceived when they purchased tickets for Madonna's Celebration Tour concerts on December 18th and 19th, 2023 at the Capital One Arena.[1]

Defendants advertised that the Celebration Tour concerts at the Capital One Arena would start at 8:30 p.m. (with doors opening at 7:30 p.m.), but Madonna did not take the stage until after 10:30 p.m. on both nights.  The concerts started over three hours late; as a result, all three individual Plaintiffs who purchased their tickets in response to the Defendants' marketing had to leave the concerts early prior to the concerts' conclusion, therefore depriving each of them of the benefit of seeing the complete concert.[2]

Madonna, and her promoter, Live Nation, purposely and deceptively withheld informing ticket purchasers in the marketing of the concerts that: (1) Madonna would not appear at 8:30 p.m. but instead would make fans wait as late as 10:40 p.m. to start her show; (2) Madonna would maintain a hot and uncomfortable temperature in the venue during her performance; and (3) Madonna would lip synch much of her

---

[1] Madonna, an American singer, songwriter, actress and business woman, commenced her Celebration Tour on October 14, 2023, visiting  cities in North America, Europe and South America. Her first North America concert was December 13, 2023 in Brooklyn, New York, followed by 46 concerts in 25 cities. Over her career, Madonna has generated over 1.4 billion dollars in concert ticket sales.

[2] This Complaint is not about unhappy fans who don't want to stay up late, but instead, reasonable, responsible people who had commitments to babysitters, work, getting their vehicles out of parking lots that closed at 12:00 midnight, and realizing that public transportation would no longer be operating.

performance.  Defendants  should  have  disclosed  to  consumers  this  important

information before they purchased their tickets.  Forcing consumers to wait hours

for her performance in a hot, uncomfortable arena is demonstrative of Madonna's

arrogant and total disrespect for her fans.  In essence, Madonna and Live Nation are

a consumer's worst nightmare.

Many ticket purchasers have expressed their anger in social media, stating[3]:

> **"I'm not sitting around for three hours to watch anyone play...
> how incredibly disrespectful to everyone from the performance, the
> crew and especially those who drove or flew and paid so much
> money to see her."**

> **"She was late when we saw her in London, we had to miss
> half the show, otherwise we would not have been able to get
> home."**

> **"The show is ready.  It's her arrogance to show you she has
> the power to make you wait."**

> **"I'm the biggest Madonna fan, but she kept me waiting way
> too long that it ruins the show.  She should go on the time that
> it says on the ticket.  Her time isn't more valuable than
> ours… it is rude."**

Finally, a prime example of Madonna's disrespect to her fans was during a

December 17, 2019, performance at the Fillmore, Miami Beach, Florida, where she

had turned off the venue's air conditioning and her uncomfortable fans chanted:

> **"A/C! A/C! AC!... and Madonna, in response, said, "f\*\*k you!
> I'm cold!... If you're hot, take your f\*\*king clothes off!"** [4]

---

[3] From news Got MEAWW.com/Celebrity News April 6, 2024.
[4] December 17, 2019, Filmore East Miami, Florida.

If Madonna was not going to perform as advertised, she should have changed the time on the Celebration Tour tickets from 8:30 p.m. to 10:30 p.m., as she and Live Nation did during the 2019 Madame X Tour, giving consumers reasonable notice of a later start time.

At the December 18th concert, after making her fans listen to pre-recorded music for over two hours in a hot arena, Madonna finally took the stage and made the following admission:

> **"I am sorry I am late...  no, I am not sorry, it's who I am... I'm always late."**

Madonna and Live Nation have publicly stated that it is not reasonable for consumers to believe that the 8:30 start time on the ticket indicates that's when the concert will begin and that no concerts start on the start time as advertised. This is absurd.  In fact, reasonable consumers have seen that concerts featuring Taylor Swift and Bruce Springsteen, whose tours are also promoted by Live Nation, do start on the time indicated on the ticket and have similar experiences attending Broadway theater, NFL football and Major League baseball games, for example.

Defendants' actions with respect to the December concerts at the Capital One Arena constitute not just a breach of contract with Plaintiffs and the Class Members, but also a wanton exercise in false advertising, intentional and negligent misrepresentation and unfair and deceptive trade practices. These acts or omissions

are not countenanced by law, and Plaintiffs and the Class Members should be compensated for their damages.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Elizabeth Halper-Asefi ("**Halper-Asefi**"), is a resident of Fairfax County, Virginia, who is over the age of 18 years.

2.      Plaintiff, Mary Conoboy ("**Conoboy**"), is a resident of Loudon County, Virginia, who is over the age of 18 years.

3.      Plaintiff, Nestor Monte, Jr. ("**Monte**"), is a resident of Prince George's County, Maryland, who is over the age of 18 years (Halper-Asefi, Conoboy, and Monte may be hereafter referred to, collectively, as "**Plaintiffs**").

4.      Defendant, Madonna Louise Ciccone ("**Madonna**"), is an individual residing in the State of New York and doing business in the District of Columbia as a concert performer under the name "Madonna." This Court has personal jurisdiction over Madonna pursuant to D.C. Code §§ 13-423(a)(1) and (a)(3).

5.       Defendant, Live Nation Worldwide, Inc. ("**Live Nation**"), is a foreign business corporation organized and existing pursuant to the laws of the State of Delaware and doing business as a concert promoter in the District of Columbia. Live Nation owns and does business as "Ticketmaster." This Court has personal jurisdiction over Live Nation pursuant to D.C. Code §§ 13-423(a)(1) and (a)(3).

6.     Defendant, Live Nation MTours (USA), Inc. ("**MTours**"), is a foreign business corporation organized and existing pursuant to the laws of the State of Delaware and doing business in the District of Columbia. This Court has personal jurisdiction over MTours pursuant to D.C. Code §§ 13-423(a)(1) and (a)(3).

7.     Defendant, Lincoln Holdings, LLC, is a limited liability company organized and existing pursuant to the laws of the District of Columbia and having its principal place of business in the District of Columbia. Lincoln Holdings, LLC does business under the name Monumental Sports & Entertainment, which owns and operates the Capital One Arena in the District of Columbia (the "**Venue**").

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. ¶ 1332(d)(2) (class action jurisdiction). Upon information and belief, the value of the tickets for the two concerts at the Capital One Arena exceed $5 million, as each of the two concerts which form the basis of this action hold up to 20,000 seats (calculated with an average ticket price of $150-$200).

9.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the contract at issue was entered into and/or performed in the District of Columbia, and the statutory and common law causes of action asserted in this Complaint arose and/or accrued there.

10.    All conditions precedent to this action have occurred, been performed, or have been waived.

## GENERAL ALLEGATIONS

### AS TO THE TICKET-PURCHASER PLAINTIFFS

11.     On or about February 23, 2023, Plaintiff Halper-Asefi purchased from StubHub, for valuable consideration in the amount of $992.76, two tickets to attend a December 19, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

12.     On or about March 30, 2023, Plaintiff Conoboy purchased from Ticketmaster, for valuable consideration in the amount of $537.70, two tickets to attend a December 18, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

13.     On or about February 23, 2023, Plaintiff Monte purchased from Ticketmaster, for valuable consideration in the amount of $252.44, two tickets to attend a December 18, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

14.     The Plaintiffs' concert tickets were purchased from Madonna, who by contract, employed Live Nation to be her tour promoter, who then arranged on her behalf ticket sales through various websites, outlets and ticket agencies. The Plaintiffs purchased their tickets in reliance of Defendants' advertisements for the concerts stating the concerts would start at 8:30 p.m., and Defendants' websites also confirmed that start time. Accordingly, Plaintiffs made the decision to purchase their tickets, in

part, based on the start time of the concerts. Further, the terms printed on the face of the aforesaid tickets stated that the musical performance by Madonna was to occur on a certain date at a certain time.

15.     Both of the subject concerts on December 18th and 19th, 2023 started over two hours late, when Madonna finally took the stage after 10:30 p.m., rather than at 8:30 p.m. Many ticket purchasers arrived around the "doors open" time of 7:30 p.m., causing them to have to wait up to three hours to see the start of the performance they paid for. Plaintiffs had to leave the Concerts early due to the fact that Madonna took the stage over two hours late and they had to get home. Further, the Venue was hot and uncomfortable, presumably at the direction of Madonna (who has a history of requiring a hot, uncomfortable temperature during her concerts) and, upon information and belief, Madonna engaged in lip synching during the concerts. (The concerts on December 18th and 19th, 2023 at the Venue shall be hereafter referred to, collectively, as the "**Concerts**").

## AS TO ALL PLAINTIFFS

16.     Defendants' advertising for the Concerts and the tickets themselves specifically stated that each concert was to begin at 8:30 p.m. and said representation regarding the start of the Concerts was material to Plaintiffs' agreement to purchase the tickets.

17.     Madonna has a long history of arriving and starting her concerts late, sometimes several hours late. This history occurred throughout her 2016 Rebel Heart Tour, her 2019-2020 Madame X Tour, and prior tours, where Madonna continuously started her concerts over two hours late. In addition, Madonna was also several hours late starting her Celebration Tour concerts in December 2023, in Brooklyn, New York, and throughout her Celebration Tour. There have been myriad articles in the media and the internet over the years of fans complaining about Madonna not taking the stage for several hours after the advertised start time of her concerts. Unfortunately, not all people who rely on advertising for the concerts know this. Further, even if some ticket purchasers know of Madonna's unfortunate history of starting her concerts late, they do not know *how late* she will show-up on stage at any particular concert, so ticket purchasers arrived at the start time as advertised.

18.     Defendants failed to provide any notice to the ticketholders that the Concerts would start much later than the start time printed on the ticket and as advertised, which resulted in the ticketholders waiting for hours for the Concerts to begin at the Venue. Ticketholders leaving the Venue much later than they wanted or anticipated due to Madonna's late start were confronted with limited public transportation, limited ride-sharing, and/or increased public and private transportation costs at that late hour. Further, ticketholders were uncomfortably hot due to Madonna's requirement that the Venue raise the temperature (this was made

worse by her failure to take the stage for over two hours after the advertised start time), and they did not know that Madonna would lip synch some of her songs.

19.     Defendants engaged in unconscionable, unfair, and/or deceptive trade practices by advertising and offering to the public Concerts that were promised to begin at 8:30 p.m., where they either knew, or should have known, that Madonna would most certainly not take the stage at the advertised start time. These unconscionable, unfair, and/or deceptive trade practices also include failing to warn ticket purchasers of the uncomfortable temperature inside the Venue and that the performer would not perform all of her music live. Plaintiffs and other ticketholders to the Concerts have suffered damages as a result of these unconscionable and unfair practices.

## CLASS ACTION ALLEGATIONS

20.     **Class Definition:** Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b), both on behalf of themselves and on behalf of the following class:

> (1) All individuals throughout the United States who, through Live Nation, purchased a ticket or tickets or became a ticketholder for the Concerts (the "Live Nation Class").

> (2) All individuals throughout the United States who, through a ticket reseller or any other person or entity who is neither Live Nation nor the box office at the Venue, purchased a ticket or tickets or became a ticketholder to the Concerts (the "Reseller Class").

(3) All individuals throughout the United States who, through the box office at the Venue, purchased a ticket or tickets or became a ticketholder to the Concerts (the "Box Office Class").

(The subject classes will be collectively referred to as the "**Class**" and the members of the Class will be collectively referred to as "**Class Members**").

21.    The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

22.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add subclasses, if deemed necessary, before this Court determines whether certification is appropriate.

23.    **Numerosity under Fed. R. Civ. P. 23(a)(1):** The number of Class Members are so numerous that separate joinder of each member is impractical. Upon information and belief, and subject to discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and

can be ascertained only by resort to Live Nation's records, included within which are Ticketmaster's records and MTours' records. Live Nation has the administrative capability through its computer systems and other records to identify all members of the Class and the amount of paid by each Class Member, whether any tickets were resold through Ticketmaster, and the price of the tickets upon resale, and such specific information is not otherwise available to Plaintiffs.

24.     **Commonality under Fed. R. Civ. P. 23(a)(2):** This action poses questions of law and fact that are common to and affect the rights of the Class relating to Live Nation's and MTours' business practices challenged herein, as well as the promotion of the Celebration Tour and the start times for Madonna's concerts. Those common questions predominate over any questions affecting only individual Class Members. The common questions include, but are not limited to:

(a) Whether there was a reasonable expectation that the Concerts would start at the time advertised for the Concerts and listed on the tickets;

(b) Whether there was a reasonable expectation that the start time of the Concerts was not subject to change;

(c) Whether, subsequent to the decision by Madonna and/or the Venue to change the start time, an offer of a refund should have been made;

(d) Whether there was a reasonable expectation that the temperature inside the Venue would be comfortable, as opposed to being made unusually hot at

the requirement of the performer, and that the performer would perform her music live (as opposed to lip synching);

(e) Whether a breach of contract occurred;

(f) Whether promissory estoppel should have prevented the changes at issue;

(g) Whether there was a negligent misrepresentation with regard to the issues detailed in this Complaint;

(h) Whether there has been a violation of D.C. Code § 28-3904 (Unfair or deceptive trade practices); and

(j) Whether Defendants have been unjustly enriched with regard to the Concerts.

25.   **Typicality under Fed. R. Civ. P. 23(a)(3):** Based on the facts and circumstances set forth herein, Plaintiffs' claims are typical of the claims of the Class Members in that they arise out of the same wrongful conduct of Defendants, with regard to the same Concerts occurring in the same city, as described herein.

26.   **Adequacy of Representation under Fed. R. Civ. P. 23(a)(4):** Based on the facts and circumstances set forth herein, Plaintiffs will fairly and adequately protect and represent the interests of each Class Member. Plaintiffs each purchased tickets to the Concerts and suffered damages as a result of the change in start time. In addition:

(a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, actions regarding concert promoters and performers;

(b) There is no hostility between Plaintiffs and the unnamed Class Members;

(c) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

(d) Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

27.  **Predominance under Fed. R. Civ. P. 23(b)(3):** The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 24 and subparts) are restated and incorporated herein by reference.

28.  **Superiority under Fed. R. Civ. P. 23(b)(3):** A class is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is very small relative to the complexity of the litigation and because the financial resources of Live Nation, MTours, Madonna, and the Venue are enormous, no Class Member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class Members will continue to suffer losses and

Defendants' conduct will proceed without remedy. In addition, even if Class Members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

29.     There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions.

30.     Plaintiffs also bring this class action as a result of the Defendants' actions or omissions set forth herein, which actions or omissions are generally applicable to all Class Members, thereby making determination of damages appropriate to the Class as a whole.

**COUNT I: VIOLATION OF D.C. CODE § 28-3904**
**(UNFAIR OR DECEPTIVE TRADE PRACTICES)**
**(as to all Defendants)**

31.     Plaintiffs repeat and reallege paragraphs 1 through 30 of the Complaint as if fully set forth herein.

32.     Plaintiffs and the Class Members are "persons" within the meaning of D.C. Code § 28-3901(a)(1). At all times relevant hereto, Plaintiffs, as well as all Class Member ticketholders, were legitimate "consumers" as defined by D.C. Code § 28-3901(a)(2) and are entitled to seek the underlying relief pursuant to D.C. Code § 28-3905(k)(1).

33.     D.C. Code § 28-3904 states: "It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact mislead, deceived, or damaged thereby. . . ."

34.     At all times material hereto, Defendants solicited, advertised, offered, and provided goods and services in the District of Columbia by way of advertising concerts, selling concert tickets, promoting, and performing live music concerts, and thereby were engaged in a trade or practice.

35.     Defendants have engaged in repeated and persistent deceptive acts and practices in the District of Columbia in the marketing and advertising of the Concerts for the Celebration Tour, including but not limited to:

  a. Misrepresenting, directly or by implication, that the start time of the Concerts would be at 8:30 p.m.;

  b. Falsely representing, directly or by implication, that the Concerts would start at 8:30 p.m.;

c. Failing to provide notice to Plaintiffs and all Class Members that the Concerts would not start at 8:30 p.m.;

d. Failing to inform (or warn) Plaintiffs and all Class Members that the temperature inside the Venue would be uncomfortably hot;

e. Failing to inform (or warn) Plaintiffs and all Class Members that Madonna would be lip synching through some of her performance; and

f. Failing to provide Plaintiffs and all Class Members with the option of receiving a refund.

36.    By engaging in the acts and practices described above, all of which were material, Defendants have engaged in and continue to engage in unfair or deceptive trade practices in violation of D.C. Code § 28-3904, including but not limited to subsections (e), (f), and (h).

37.    Defendants' representations and omissions were materially false and misleading and likely to deceive the consuming public because Defendants knew and failed to disclose that (i) Madonna would, or would most likely, start the Concerts late and that she has a consistent history over many years of starting her concerts over two hours late, (ii) the temperature inside the Venue would be uncomfortably hot as required by Madonna, and (iii) Madonna would be lip synching through some of her performance.

38.     The deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other Class Members. Indeed, Defendant's false and deceptive representations caused Plaintiffs and other Class Members to suffer actual damages, including not being able to see the Concerts they paid money to see.

39.     Said actions and omissions were committed for various Madonna concerts throughout the United States and over many years sufficiently to be considered a regular business practice.

40.     Plaintiffs and the Class Members are entitled to pursue claims against Defendants for actual damages, treble damages (or $1,500 per violation, whichever is greater), punitive damages (if permitted), costs, and reasonable attorneys' fees pursuant to D.C. Code § 28-3905(k)(2) to redress Defendant's violations of D.C. Code § 28-3904.

41.     Plaintiffs have retained the undersigned counsel to represent them and all Class Members in this matter and have agreed to pay a reasonable attorneys' fee for their counsel's professional services.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual damages, treble damages (or statutory damages, whichever are greater), as well as attorneys' fees and costs

pursuant to D.C. Code § 28-3905(k), pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT II: BREACH OF CONTRACT
### (against Live Nation)

42.     Plaintiffs repeat and reallege paragraphs 1 through 30 of the Complaint as if fully set forth herein.

43.     Plaintiffs and all other Class Members entered into a valid and enforceable written contract with Live Nation, in which it advertised and offered tickets for the Concerts that were promised to begin at 8:30 p.m., the terms of which Plaintiffs accepted by virtue of their purchase of such offered tickets, and which promises were contained in printed representations in advertisements for the tickets and on the tickets themselves.

44.     Plaintiffs and all other Class Members fully performed under the contract by paying valuable consideration to Live Nation.

45.     Live Nation breached its contract with Plaintiffs by (i) failing to provide Plaintiffs and all other Class Members with a concert that began at the time promised, (ii) failing to provide a comfortable concert environment by raising the temperature to unusual levels at the request of the performer, and (iii) allowing Madonna to lip synch through some of her performance. Additionally, Live Nation failed to provide any notice that the Concerts would not begin at 8:30 p.m., that the Venue would be uncomfortably hot, or that Madonna would be lip synching some of her performance.

46.    All conditions precedent to bringing this action for breach of contract have occurred or have been waived.

47.    As a direct and proximate result of said breach of contract by Live Nation, Plaintiffs and all other Class Members have suffered actual and consequential damages.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Live Nation for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

### COUNT III: UNJUST ENRICHMENT
**(against Live Nation  – pled in the alternative to Count II)**

48.    Plaintiffs repeat and reallege paragraphs 1 through 30 of the Complaint as if fully set forth herein.

49.    Live Nation collected money for concert tickets from Plaintiffs and other Class Members who reasonably believed, based on Defendants' advertising and marketing, that (i) the Concerts would promptly begin at 8:30 p.m., (ii) that the temperature inside the concert venue would be comfortable and consistent with all other activities inside the venue, and (iii) Madonna would not lip synch through some of her songs. Had Plaintiffs and other Class Members known that the Concerts would start after 10:30 p.m., that it would be uncomfortably hot, and that the performer would be lip synching, they would not have purchased their tickets.

50.     As a result, Plaintiffs and the Class Members have conferred a benefit on Live Nation.

51.     Live Nation had knowledge of this benefit and voluntarily accepted and retained the benefit conferred.

52.     Live Nation will be unjustly enriched if it is allowed to retain the aforementioned benefits, and Plaintiff and each Class Member is entitled to recover the amount by which Live Nation was unjustly enriched at Plaintiffs' and each Class Member's expense.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Live Nation for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (against all Defendants)

53.     Plaintiffs repeat and reallege paragraphs 1 through 30 of the Complaint as if fully set forth herein.

54.     At all times material hereto, Defendants represented to Plaintiffs and all other Class Members through various advertising campaigns, and on their respective websites, that the Concerts would start at 8:30 p.m. Further, Defendants failed to represent (or omitted representing) that the concert venue would be unusually and

uncomfortably hot, and that Madonna would be lip synching through some of her performance.

55.     Based on the years-long history of Madonna arriving several hours late to prior concerts (and which conduct also occurred throughout the Celebration Tour) Defendants knew or should have known that the Concerts would not start at 8:30 p.m., and that Madonna would not take the stage until several hours after the start time, causing Plaintiffs and all Class Members to have to wait several hours. Defendants also knew or should have known, based on significant media attention, that Madonna's fans have complained about the unusually and uncomfortably hot environment inside her concerts, and/or that Madonna would be lip synching through some of her performance. Despite that, Defendants misrepresented the start time of the concerts and failed to make representations about the temperature and lip synching, with the intent to induce Plaintiffs to rely on those representations (and omissions).

56.     As a result of said representations and omissions, and in reliance thereon, Plaintiffs and all Class Members purchased concert tickets.

57.     As a result of said misrepresentations and omissions, Plaintiffs and the Class Members suffered actual and consequential damages, including but not limited to loss of consideration paid for their concert tickets.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

Dated: April 18, 2024                    Respectfully submitted,

**SCHWARTZ & GREENBAUM, LLC**

By: /s/ David A. Greenbaum
David A. Greenbaum, Esq.
DC Bar No. 420585
409 Washington Ave., Suite 300
Towson, MD 21204
410.321.8400 – Telephone
Email: dag@sgmdlaw.com

-and-

**MARCUS W. CORWIN, P.A.**
**d/b/a CORWIN LAW**

By: /s/ Marcus W. Corwin
Marcus W. Corwin, Esq.
FL Bar No. 764647
6501 Congress Avenue, Ste. 100
Boca Raton, FL 33487
561.482.3636 – Telephone
Email: mcorwin@corwinlawfirm.com

*Pro Hac Vice Admission Pending*
*Attorneys for Plaintiffs*