**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELIZABETH HALPER-ASEFI<br>[Address omitted.  Request made to<br>file under Seal]<br><br>MARY CONOBOY<br>[Address omitted.  Request made to<br>file under Seal]<br><br>NESTOR MONTE, JR.<br>[Address omitted.  Request made to<br>file under Seal]<br><br>*on behalf of themselves*<br>*and others similarly situated,*<br><br>        Plaintiffs,<br><br>v.<br><br>MADONNA LOUISE CICCONE<br>152-156 E. 81st St.<br>New York, NY 10028<br><br>LINCOLN HOLDINGS, LLC D/B/A<br>MONUMENTAL SPORTS &<br>ENTERTAINMENT<br>601 F. Street, N.W.<br>Washington, D.C. 20004<br><br>        Defendants. | CASE NO. 1:24-cv-01118<br><br>**AMENDED CORRECTED CLASS**<br>**ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

Plaintiffs, Elizabeth Halper-Asefi, Mary Conoboy, and Nestor Monte, Jr., as Class

Representatives, on behalf of themselves and all others similarly situated, by and through their

undersigned attorneys, file their complaint against Defendants, Madonna Louise Ciccone,

1

individually, and Lincoln Holdings, LLC d/b/a Monumental Sports & Entertainment, and aver as follows:

## **INTRODUCTION**

This class action complaint is filed by three consumers who were deceived when they purchased tickets for Madonna's Celebration Tour concerts on December 18th and 19th, 2023 at the Capital One Arena ("Arena").[1]   Defendants' actions with respect to the December concerts at the Arena constitute a wanton exercise in false advertising, intentional and negligent misrepresentation, unfair and deceptive trade practices, and breach of promissory estoppel furthered in a conspiracy by Defendants to deceive Plaintiffs.  As a result of Defendants unlawful behavior, total actual and statutory damages payable to all potential proposed Class Members could exceed $50,000,000.  These acts and omissions are not countenanced by law, and Plaintiffs and the Class Members should be compensated for their damages.

Defendants advertised that the Celebration Tour concerts at the Capital One Arena would start at 8:30 p.m. (with doors opening at 7:30 p.m.), but Madonna did not take the stage until after 10:30 p.m. on both nights.  The concerts started over two hours late; as a result, all three individual Plaintiffs who purchased their tickets in response to the Defendants' marketing had to leave the concerts early prior to the concerts' conclusion, therefore depriving each of them of the benefit of seeing the complete concert.[2]

---

[1] Madonna, an American singer, songwriter, actress and business woman, commenced her Celebration Tour on October 14, 2023, visiting cities in North America, Europe and South America. Her first North America concert was December 13, 2023 in Brooklyn, New York, followed by 46 concerts in 25 cities. Over her career, Madonna has generated over 1.4 billion dollars in concert ticket sales.

[2] This Complaint is not about unhappy fans who don't want to stay up late, but instead, reasonable, responsible people who had commitments to babysitters, work, getting their vehicles out of parking

Madonna and the Capital One Arena owner purposely and deceptively withheld informing ticket purchasers in the marketing of the concerts that: (1) Madonna would not appear at 8:30 p.m. but instead would make fans wait as late as 10:40 p.m. to start her show; (2) Madonna would maintain a hot and uncomfortable temperature in the venue during her performance; and (3) Madonna would lip synch much of her performance. Defendants should have disclosed to consumers this important information before they purchased their tickets.  Forcing consumers to wait hours for her performance in a hot, uncomfortable arena is demonstrative of Madonna's arrogant and total disrespect for her fans.  In essence, Madonna and Live Nation are a consumer's worst nightmare.

Many ticket purchasers have expressed their anger in social media, stating[3]:

> **"I'm not sitting around for three hours to watch anyone play... how incredibly disrespectful to everyone from the performance, the crew and especially those who drove or flew and paid so much money to see her."**

> **"The show is ready.  It's her arrogance to show you she has the power to make you wait."**

> **"I'm the biggest Madonna fan, but she kept me waiting way too long that it ruins the show.  She should go on the time that it says on the ticket.  Her time isn't more valuable than ours… it is rude."**

If Madonna was not going to perform as advertised, she should have changed the start time on the Celebration Tour tickets from 8:30 p.m. to 10:30 p.m., as she did during the 2019 Madame X Tour, giving consumers reasonable notice of a later start time.

At the December 18th concert, after making her fans listen to pre-recorded music for over two hours in a hot arena, Madonna finally took the stage and made the following admission:

---

lots that closed at 12:00 midnight, and realizing that public transportation would no longer be operating.

[3] From news Got MEAWW.com/Celebrity News April 6, 2024.

**"I am sorry I am late...  no, I am not sorry, it's who I am... I'm always late."**

Madonna has publicly stated that it is not reasonable for consumers to believe that the 8:30 start time on the ticket indicates that's when the concert will begin and that no concerts start on the start time as advertised.  This is absurd.  In fact, reasonable consumers have seen that concerts featuring Taylor Swift and Bruce Springsteen do start on the time indicated on the ticket and have similar experiences attending Broadway theater, NFL football and Major League baseball games, for example.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Elizabeth Halper-Asefi ("Halper-Asefi"), is a resident of Fairfax County, Virginia, who is over the age of 18 years.

2.     Plaintiff, Mary Conoboy ("Conoboy"), is a resident of Loudon County, Virginia, who is over the age of 18 years.

3.     Plaintiff, Nestor Monte, Jr. ("Monte"), is a resident of Prince George's County, Maryland, who is over the age of 18 years (Halper-Asefi, Conoboy, and Monte may be hereafter referred to, collectively, as "Plaintiffs").

4.     Defendant, Madonna Louise Ciccone ("Madonna"), is an individual residing in the State of New York and doing business in the District of Columbia as a concert performer under the name "Madonna." This Court has personal jurisdiction over Madonna pursuant to D.C. Code §§ 13-423(a)(1) and (a)(3).

5.     Defendant, Lincoln Holdings, LLC, is a limited liability company organized and existing pursuant to the laws of the District of Columbia and having its principal place of business in the District of Columbia. Lincoln Holdings, LLC does business under the name Monumental

Sports & Entertainment ("MSA")., which owns and operates the Capital One Arena (herein after the "Arena") in the District of Columbia.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. ¶ 1332(d)(2) (class action jurisdiction). Upon information and belief, the value of the tickets for the two concerts at the Capital One Arena exceed $5 million, as each of the two concerts which form the basis of this action hold up to 20,000 seats (calculated with an average ticket price of $150-$200).

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the contract at issue was entered into and/or performed in the District of Columbia, and the statutory and common law causes of action asserted in this Complaint arose and/or accrued there.

8.      All conditions precedent to this action have occurred, been performed, or have been waived.

## GENERAL ALLEGATIONS

### AS TO THE TICKET-PURCHASER PLAINTIFFS

9.      On or about February 23, 2023, Plaintiff Halper-Asefi purchased from StubHub, for valuable consideration in the amount of $992.76, two tickets to attend a December 19, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

10.     On or about March 30, 2023, Plaintiff Conoboy purchased from Ticketmaster, for valuable consideration in the amount of $537.70, two tickets to attend a December 18, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

11.     On or about February 23, 2023, Plaintiff Monte purchased from Ticketmaster, for valuable consideration in the amount of $252.44, two tickets to attend a December 18, 2023 musical performance at the Venue by Madonna, during her "Celebration Tour" concert tour.

12.     The Plaintiffs' concert tickets were purchased from Madonna, who then arranged on her behalf ticket sales through various websites, outlets and ticket agencies. The Plaintiffs purchased their tickets in reliance of Defendants' advertisements for the concerts stating the concerts would start at 8:30 p.m., and Defendants' websites also confirmed that start time. Accordingly, Plaintiffs made the decision to purchase their tickets, in part, based on the start time of the concerts. Further, the terms printed on the face of the aforesaid tickets stated that the musical performance by Madonna was to occur on a certain date at a certain time.

13.     Both of the subject concerts on December 18th and 19th, 2023 started over two hours late, when Madonna finally took the stage after 10:30 p.m., rather than at 8:30 p.m. Many ticket purchasers arrived around the "doors open" time of 7:30 p.m., causing them to have to wait up to three hours to see the start of the performance they paid for.  Some potential Class Members, such as Plaintiffs, had to leave the Concerts early due to the fact that Madonna took the stage over two hours late and they had to get home.  Other potential Class Members stayed for Concerts and thereby incurred additional unanticipated expenses due to the excessively delayed start, such as additional child care and transportation costs.  Further, the Arena was hot and uncomfortable at the direction of Madonna and, upon information and belief, Madonna engaged in lip synching during the concerts. (The concerts on December 18th and 19th, 2023 at the Arena shall be hereafter referred to, collectively, as the "Concerts").

**AS TO ALL PLAINTIFFS**

14.     Defendants' advertising for the Concerts and the tickets themselves specifically stated that each concert was to begin at 8:30 p.m. and said representation regarding the start of the Concerts was material to Plaintiffs' agreement to purchase the tickets.

15.     Defendants failed to provide any notice to the ticketholders that the Concerts would start much later than the start time printed on the ticket and as advertised, which resulted in the ticketholders waiting for hours for the Concerts to begin at the Venue. Ticketholders leaving the Venue hours later than they wanted or anticipated due to Madonna's late start were confronted with limited public transportation, limited ride-sharing, and/or increased public and private transportation costs at that late hour.  Many had to pay additional costs for babysitters.  Further, ticketholders were uncomfortably hot due to Madonna's requirement that the Venue raise the temperature (this was made worse by her failure to take the stage for over two hours after the advertised start time), and they did not know that Madonna would lip synch some of her songs.

16.     Defendants engaged in unconscionable, unfair, and/or deceptive trade practices by advertising and offering to the public Concerts that were promised to begin at 8:30 p.m., where they either knew, or should have known, that Madonna would most certainly not take the stage at the advertised start time.  These unconscionable, unfair, and/or deceptive trade practices also include failing to warn ticket purchasers of the uncomfortable temperature inside the Arena and that the performer would not perform all of her music live.  Plaintiffs and other ticketholders to the Concerts have suffered damages as a result of these unconscionable and unfair practices.

**CLASS ACTION ALLEGATIONS**

17.     **Class Definition:** Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b), both on behalf of themselves and on behalf of the following class:

(1) All individuals throughout the United States who purchased a ticket or tickets from Madonna or through her agents or became a ticketholder for the Concerts (the "Madonna Subclass"). [4]

(2) All individuals throughout the United States who, through a ticket reseller or any other person or entity who is neither Madonna nor the box office at the Arena, purchased a ticket or tickets or became a ticketholder to the Concerts (the "Reseller Subclass").

(3) All individuals throughout the United States who, through the box office at the Capital One Arena, purchased a ticket or tickets or became a ticketholder to the Concerts (the "Box Office Subclass").

(The subject subclasses will be collectively referred to as the "**Class**" and the members of the Class will be collectively referred to as "**Class Members**" and).

18.     The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

19.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class and/or to add subclasses, if deemed necessary, before this Court determines whether certification is appropriate.

---

[4] Ticket sales by Madonna and her agents and resellers were processed by Ticketmaster, LLC.  Pursuant to the Ticketmaster, LLC Purchase Policy, Ticketmaster, LLC acts as agents to those who provide events such as artists, including Madonna referred to as the "Event Organizer".  Further, "We generally sell tickets on behalf of the Event Organizer" and when you purchase a ticket for an event, Ticketmaster, LLC will be handling the transaction and collecting payment for the Event Organizer.  Further, Ticketmaster, LLC, in its Purchase Policy, confirms that it is Madonna who sets the ticket prices and that the tickets are generally sold through several distribution points, including websites, apps and box offices.

20.     **Numerosity under Fed. R. Civ. P. 23(a)(1):** The number of Class Members is so numerous that separate joinder of each member is impractical. Upon information and belief, and subject to discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendants' records. Defendants have the administrative capability through their computer systems and other records to identify all members of the Class and the amount of paid by each Class Member, whether any tickets were sold by Madonna or her agents or resold by resellers, the price of the tickets upon sale or resale, and such specific information is not otherwise available to Plaintiffs.

21.     **Commonality under Fed. R. Civ. P. 23(a)(2):** This action poses questions of law and fact that are common to and affect the rights of the Class relating Defendants' business practices challenged herein, as well as the promotion of the Celebration Tour and the start times for Madonna's concerts. Those common questions predominate over any questions affecting only individual Class Members. The common questions include, but are not limited to:

(a) Whether there was a reasonable expectation that the Concerts would start at the time advertised for the Concerts and listed on the tickets;

(b) Whether there was a reasonable expectation that the start time of the Concerts was not subject to change;

(c) Whether, subsequent to the decision by Madonna and/or MSA to change the start time, an offer of a refund should have been made;

(d) Whether there was a reasonable expectation that the temperature inside the Arena would be comfortable, as opposed to being made unusually hot at the requirement of the performer, and that the performer would perform her music live (as opposed to lip synching);

(e)  Whether promissory estoppel should have prevented the changes at issue;

(f)  Whether there were fraudulent misrepresentations and/or omissions made with regard to the issues detailed in this Complaint;

(g)  Whether there were negligent misrepresentations and/or omissions made with regard to the issues detailed in this Complaint;

(h)  Whether there has been a violation of D.C. Code § 28-3904 (Unfair or deceptive trade practices); and

(i)  Whether Defendants have been unjustly enriched with regard to the Concerts.

(j)  Whether Defendants conspired to commit acts described above.

22.  **Typicality under Fed. R. Civ. P. 23(a)(3):** Based on the facts and circumstances set forth herein, Plaintiffs' claims are typical of the claims of the Class Members in that they arise out of the same wrongful conduct of Defendants, with regard to the same Concerts occurring in the same city, as described herein.

23.  **Adequacy of Representation under Fed. R. Civ. P. 23(a)(4):** Based on the facts and circumstances set forth herein, Plaintiffs will fairly and adequately protect and represent the interests of each Class Member. Plaintiffs each purchased tickets to the Concerts and suffered damages as a result of the change in start time. In addition:

(a)  Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, actions regarding concert promoters and performers;

(b)  There is no hostility between Plaintiffs and the unnamed Class Members;

(c)  Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

(d)  Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

24.  **Predominance under Fed. R. Civ. P. 23(b)(3):** The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations (paragraph 24 and subparts) are restated and incorporated herein by reference.

25.  **Superiority under Fed. R. Civ. P. 23(b)(3):** A class is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is very small relative to the complexity of the litigation and because the financial resources of Defendants are enormous, no Class Member could afford to seek legal redress individually for the claims alleged herein.  Further, absent a class action, the Class Members will continue to suffer losses and Defendants' conduct will proceed without remedy.  Thus the Class Members' interests are best served by a class action rather than by individual actions.  In addition, even if Class Members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

26.     Plaintiffs also bring this class action as a result of the Defendants' actions or omissions set forth herein, which actions or omissions are generally applicable to all Class Members, thereby making determination of damages appropriate to the Class as a whole.

## COUNT I: VIOLATION OF D.C. CODE § 28-3904
## (UNFAIR OR DECEPTIVE TRADE PRACTICES)

27.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.     Plaintiffs and the Class Members are "persons" within the meaning of D.C. Code § 28-3901(a)(1). At all times relevant hereto, Plaintiffs, as well as all Class Member ticketholders, were legitimate "consumers" as defined by D.C. Code § 28-3901(a)(2) and are entitled to seek the underlying relief pursuant to D.C. Code § 28-3905(k)(1).

29.     D.C. Code § 28-3904 states: "It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact mislead, deceived, or damaged thereby. . . ."

30.     At all times material hereto, Defendants solicited, advertised, offered, and provided goods and services in the District of Columbia by way of advertising concerts, selling concert tickets, promoting, and performing live music concerts, and thereby were engaged in a trade or practice.

31.     Defendants have engaged in repeated and persistent deceptive acts and practices in the District of Columbia in the marketing and advertising of the Concerts for the Celebration Tour, including but not limited to:

a.  Misrepresenting, directly or by implication, that the start time of the Concerts would be at 8:30 p.m.;

b.  Falsely representing, directly or by implication, that the Concerts would start at 8:30 p.m.;

c.  Failing to provide notice to Plaintiffs and all Class Members that the Concerts would not start at 8:30 p.m.;

d.  Failing to inform (or warn) Plaintiffs and all Class Members that the temperature inside the Venue would be uncomfortably hot;

e.  Failing to inform (or warn) Plaintiffs and all Class Members that Madonna would be lip synching through some of her performance; and

f.  Failing to provide Plaintiffs and all Class Members with the option of receiving a refund.

32.     By engaging in the acts and practices described above, all of which were material, Defendants have engaged in and continue to engage in unfair or deceptive trade practices in violation of D.C. Code § 28-3904, including but not limited to subsections (e), (f), and (h).

33.     Defendants' representations and omissions were materially false and misleading and likely to deceive the consuming public because Defendants knew or should have known and failed to disclose that (i) Madonna would, or would most likely, start the Concerts late and that she has a consistent history over many years of starting her concerts over two hours late, (ii) the temperature inside the Venue would be uncomfortably hot as required by Madonna, and (iii) Madonna would be lip synching through some of her performance.

34.     The deceptive acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and the other Class Members. Indeed, Defendant's false and deceptive representations caused Plaintiffs and other Class Members to suffer actual damages, including not being able to completely experience the Concerts they paid money to see.

35.     Said actions and omissions were committed for various Madonna concerts throughout the United States and over many years sufficiently to be considered a regular business practice.

36.     Plaintiffs and the Class Members are entitled to pursue claims against Defendants for actual damages, treble damages (or $1,500 per violation, whichever is greater), punitive damages (if permitted), costs, and reasonable attorneys' fees pursuant to D.C. Code § 28-3905(k)(2) to redress Defendant's violations of D.C. Code § 28-3904.

37.     Plaintiffs have retained the undersigned counsel to represent them and all Class Members in this matter and have agreed to pay a reasonable attorneys' fee for their counsel's professional services.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual damages, treble damages (or statutory damages, whichever are greater), as well as attorneys' fees and costs pursuant to D.C. Code § 28-3905(k), pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT II: PROMISSORY ESTOPPEL

38.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

39.     Defendants represented in their advertising that the Concerts would start at 8:30 p.m. Contrary to that representation, the concerts did not start at 8:30 p.m. but after 10:30 p.m., over two hours later.

40.     Plaintiffs reasonably relied on the advertising that said the concert would start at 8:30 p.m.

41.     Defendants were estopped from changing their position to the detriment of Plaintiffs.

42.     Plaintiff suffered actual damages as a result of Defendants' change in their position, either having to leave the Concerts before seeing the performances for which they paid or having to incur additional expenses for having to stay at the Concerts hours longer than they would have reasonably anticipated.          .

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Live Nation for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT III: UNJUST ENRICHMENT

48.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

49.     Defendants received revenue based on sales of concert tickets to Plaintiffs and other Class Members who reasonably believed, based on Defendants' advertising and marketing, that (i) the Concerts would promptly begin at 8:30 p.m., (ii) that the temperature inside the concert venue would be comfortable and consistent with all other activities inside the venue, and (iii) Madonna would not lip synch through some of her songs. Had Plaintiffs and other Class Members known that the Concerts would start after 10:30 p.m., that it would be uncomfortably hot, and that the performer would be lip synching, they would not have purchased their tickets.

50.     As a result, Plaintiffs and the Class Members have conferred a benefit on Defendants.

51.     Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred.

52.     Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and Plaintiff and each Class Member is entitled to recover the amount by which Defendants were unjustly enriched at Plaintiffs' and each Class Member's expense.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Venue for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

### COUNT IV: FRAUDULENT MISREPRESENTATION

53.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

54.     At all times material hereto, Defendants represented to Plaintiffs and all other Class Members through various advertising campaigns, and on their respective websites, that the Concerts would start at 8:30 p.m.  Further, Defendants failed to represent (or omitted representing) that the Arena would be unusually and uncomfortably hot, and that Madonna would be lip synching through some of her performance.

55.     Defendants knew that the Concerts would not start at 8:30 p.m., and that Madonna would not take the stage until several hours after the start time, causing Plaintiffs and all Class Members to have to wait several hours.  Defendants also knew that there would be an uncomfortably hot environment inside the Arena during the Concerts that would significantly impact the value received and enjoyment for attendees of the Concerts,, and that Madonna would be lip synching through some of her performance.  Despite that, Defendants intentionally misrepresented the start time of the concerts and intentionally failed to disclose the hot temperature in the Arena and the lip synching, with the intent to induce Plaintiffs to rely on those representations (and omissions).

56.     As a result of said representations and omissions, and in reasonable reliance thereon, Plaintiffs and all Class Members purchased tickets for the Concerts and made arrangements for attending the Concerts, including, without limitation, transportation and babysitting.

57.     As a result of said fraudulent misrepresentations and omissions, Plaintiffs and the Class Members suffered actual and consequential damages, including but not limited to loss of consideration paid for their concert tickets, loss of reasonably expected enjoyment for live performances under tolerable conditions for the Concerts, and for additional expenses incurred for having the Concerts end hours after reasonably expected.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT V: NEGLIGENT MISREPRESENTATION
### (In the Alternative to Count IV)

58.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

59.     At all times material hereto, Defendants had a duty to accurately represent to Plaintiffs and all other Class Members the start times of the Concerts and any unusual conditions under which the Concerts would be performed, including unusual temperatures and that the Concerts would not be entirely live.

60.     At all times material hereto, Defendants represented to Plaintiffs and all other Class Members through various advertising campaigns, and on their respective websites, that the Concerts would start at 8:30 p.m.  Further, Defendants failed to represent (or omitted representing) that the concert venue would be unusually and uncomfortably hot, and that Madonna would be lip synching through some of her performances.

61.     Defendants reasonably should have known that the Concerts would not start at 8:30 p.m., and that Madonna would not take the stage until several hours after the start time, causing Plaintiffs and all Class Members to have to wait several hours.  Defendants also should reasonably have known that there would be an uncomfortably hot environment inside the Arena during the Concerts that would significantly impact the value received and enjoyment for attendees of the Concerts, and that Madonna would be lip synching through some of her performance.  Defendants further should have known that Plaintiffs and all Class Members would have reasonably relied on Defendants' misrepresentations and omissions in purchasing tickets for the Concerts and making arrangements to attend the Concerts.  Despite that, Defendants misrepresented the start time of the concerts and failed to make representations about the temperature and lip synching.

62.     As a result of said representations and omissions, and in reasonable reliance thereon, Plaintiffs and all Class Members purchased tickets for the Concerts and made arrangements for attending the Concerts, including, without limitation transportation and babysitting.

63.     As a result of said negligent misrepresentations and omissions, Plaintiffs and the Class Members suffered actual and consequential damages, including but not limited to loss of consideration paid for their concert tickets, loss of reasonably expected enjoyment for live performances under tolerable conditions for the Concerts, and for additional expenses incurred for having the Concerts end hours after reasonably expected.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## COUNT VI: CIVIL CONSPIRACY

64.     Plaintiffs repeat and reallege paragraphs 1 through 26 of the Complaint as if fully set forth herein.

65.     Defendants mutually agreed to intentionally and maliciously participate in a civil conspiracy to engage in unfair trade practices, violate promissory estoppel, unjustly enrich themselves against Plaintiffs and fraudulently misrepresent the start time of the Concerts and fail to represent the temperature in the Arena and that Madonna would be lip-synching.

66.     Defendants individually and through agents, materially participated, conspired, assisted, encouraged, and otherwise aided and abetted each other and others in carrying out the unlawful acts and the things therein alleged pursuant to and in furtherance of a conspiracy described herein.

67.     Defendants conspired together to engage in repeated and persistent deceptive acts and practices in the District of Columbia in the marketing and advertising of the Concerts for the Celebration Tour.

68.     Defendants conspired together to negligently make misrepresentations and omissions concerning the start time of the concerts and failed to make representations about the temperature and lip synching, and Plaintiffs reasonably relied on those representations and omissions.

WHEREFORE, Plaintiffs, individually, and on behalf of all Class Members, demand judgment against Defendants for actual and consequential damages, as well as costs, pre and post-judgment interest as permitted by law, and any other relief that this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment on behalf of themselves and the Classes:

a.      Certifying the Class and Subclasses as requested herein;

b.      Awarding actual, direct and compensatory damages;

c.      Awarding restitution and disgorgement of revenues if warranted;

d.      Awarding declaratory relief as permitted by law or equity, including declaring the Defendants' practices as set forth herein to be unlawful;

e.      Awarding injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing those unlawful practices as set forth herein, and directing the Defendants to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

f.      Awarding statutory and multiple damages, as appropriate;

g.      Awarding attorneys' fees and costs; and

h.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: June 20, 2024          Respectfully submitted,

**SCHWARTZ & GREENBAUM, LLC**

By: /s/ David A. Greenbaum
David A. Greenbaum, Esq.
DC Bar No. 420585
409 Washington Ave., Suite 300
Towson, MD 21204
410.321.8400 – Telephone
Email: dag@sgmdlaw.com

-and-

**MARCUS W. CORWIN, P.A.**
**d/b/a CORWIN LAW**

By: /s/ Marcus W. Corwin
Marcus W. Corwin, Esq.
FL Bar No. 764647
6501 Congress Avenue, Ste. 100
Boca Raton, FL 33487
561.482.3636 – Telephone
Email: mcorwin@corwinlawfirm.com
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*