**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELIZABETH HALPER-ASEFI<br>[Address omitted.  Request made to<br>file under Seal]<br><br>MARY CONOBOY<br>[Address omitted.  Request made to<br>file under Seal]<br><br>NESTOR MONTE, JR.<br>[Address omitted.  Request made to<br>file under Seal]<br><br>*on behalf of themselves*<br>*and others similarly situated,*<br><br>            Plaintiffs,<br><br>   v.<br><br>MADONNA LOUISE CICCONE<br>152-156 E. 81st St.<br>New York, NY 10028<br><br>LINCOLN HOLDINGS, LLC D/B/A<br>MONUMENTAL SPORTS &<br>ENTERTAINMENT<br>601 F. Street, N.W.<br>Washington, D.C. 20004<br><br>            Defendants. | Case No. 1:24-cv-01118-RC |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**</u>

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND .....................................................................................................4

ARGUMENT ..............................................................................................................................9

I.      THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) .........9

      A.      Legal Standard for Motion to Dismiss for Failure to State a Claim .......................9

      B.      Plaintiffs Do Not and Cannot Plausibly Allege that Defendants Misrepresented
           When Madonna Would Take or Leave the Stage ....................................................9

      C.      Plaintiffs Fail to State Omission-Based Claims Premised on Their Conclusory
           Assertions that the Venue was "Uncomfortably Hot" and that Madonna "Lip
           Synched" ...............................................................................................................16

      D.      Plaintiffs' Claims Also Fail for Other Independent Reasons.................................19

II.     THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1)
      BECAUSE PLAINTIFFS LACK ARTICLE III STANDING .........................................21

      A.      Legal Standard for Motion to Dismiss for Lack of Article III Standing ..............21

      B.      Plaintiffs Fail to Plausibly Allege Any Cognizable Injury Traceable to the
           Asserted Claims ....................................................................................................22

      C.      Plaintiffs Fail to Plausibly Allege Any Injury Caused by the Remaining
           Defendants ............................................................................................................24

      D.      Plaintiffs Lack Standing to Seek Injunctive Relief...............................................25

III.    IF ANY PART OF THE AMENDED COMPLAINT SURVIVES, THE COURT
      SHOULD STRIKE ITS CLASS ALLEGATIONS .........................................................26

      A.      Legal Standard for Motion to Strike Class Allegations ........................................26

      B.      The Amended Complaint's Class Allegations Should be Stricken Because the
           Proposed Class Could Never be Certified .............................................................27

CONCLUSION.........................................................................................................................31

**TABLE OF AUTHORITIES**

**Page(s)**

<span style="font-variant: small-caps;">Cases</span>

*Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*,
  149 F. Supp. 3d 1 (D.D.C. 2015) ...............................................................27, 29, 30

*Anderson v. USAA Cas. Ins. Co.*,
  221 F.R.D. 250 (D.D.C. 2004) ...................................................................9, 19

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ....................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................9, 21

*Attias v. CareFirst, Inc.*,
  344 F.R.D. 38 (D.D.C. 2023) .....................................................................27

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
  168 F. Supp. 3d 1 (D.D.C. 2016) ...............................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................9

*BHC Interim Funding II, L.P. v. F.D.I.C.*,
  851 F. Supp. 2d 131 (D.D.C. 2012) ...........................................................4

*Brookens v. Solis*,
  635 F. Supp. 2d 1 (D.D.C. 2009), *aff'd*, 2009 WL 5125192 (D.C. Cir. Dec. 9,
  2009) ..........................................................................................................7

*Burks Cos. v. Howard Univ.*,
  2018 U.S. Dist. LEXIS 225203 (D.D.C. May 9, 2018) ..............................17

*Chen v. Dunkin' Brands, Inc.*,
  954 F.3d 492 (2d Cir. 2020) .......................................................................11

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .....................................................................................26

*Daniel v. Mondelez Int'l, Inc.*,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) ........................................................13

*Authorities upon which Defendants' counsel chiefly rely are marked with asterisks
 pursuant to LCvR 7(a).

*Dearth v. Holder*,
641 F.3d 499 (D.C. Cir. 2011) ............................................................................25

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006).................................................................................27

*District of Columbia v. Facebook*,
2023 D.C. Super. Lexis 7 (D.C. Super. Ct. June 1, 2023) .........................10, 11, 14

*Druyan v. Jagger*,
508 F. Supp. 2d 288 (S.D.N.Y. 2007)..............................................................14, 30

*E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*,
496 F. Supp. 3d 338 (D.D.C. 2020) .....................................................................10

*EAW Grp., Inc. v. Republic of Gam.*,
2005 U.S. Dist. LEXIS 56012 (D.D.C. June 6, 2005) .....................................17, 19

*Edwards v. Ocwen Loan Servicing, LLC*,
24 F. Supp. 3d 21 (D.D.C. 2014) .........................................................................16

*Ekopel D.O.O. v. Citibank, N.A.*,
2024 WL 519648 (D.D.C. Feb. 9, 2024) ..............................................................19

*Fahey v. Deoleo USA, Inc.*,
2018 WL 5840664 (D.D.C. Nov. 8, 2018) ............................................................18

*Findlay v. CitiMortgage, Inc.*,
813 F. Supp. 2d 108 (D.D.C. 2011) ......................................................................21

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).................................................................................11

*Floyd v. Bank of Am. Corp.*,
70 A.3d 246 (D.C. 2013) ........................................................................10, 13, 16

*Ford v. Reynolds*,
326 F. Supp. 2d 392 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006)....................22

*Geffner v. Coca-Cola Co.*,
928 F.3d 198 (2d Cir. 2019)..................................................................................11

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..............................................................................................27

*Gutierrez v. Wells Fargo Bank, NA*,
889 F.3d 1230 (11th Cir. 2018) ............................................................................30

*Hackman v. Goya Foods*,
2018 D.C. Super. LEXIS 138 (D.C. Super. Ct. Oct. 2, 2018) ................................................17

*Halldorson v. Sandi Grp.*,
934 F. Supp. 2d 147 (D.D.C. 2013) .........................................................................................4

*He Depu v. Yahoo! Inc.*,
306 F. Supp. 3d 181 (D.D.C. 2018) ........................................................................................20

*Hettinga v. United States*,
677 F.3d 471 (D.C. Cir. 2012) .................................................................................................31

*Hill v. Medlantic Health Care Grp.*,
933 A.2d 314 (D.C. 2007) .......................................................................................................20

*Hourani v. Mirtchev*,
943 F. Supp. 2d 159 (D.D.C. 2013), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015) ......................8, 12, 25

*In re BHI Int'l, Inc.*,
2012 WL 4738747 (Bankr. D.D.C. Oct. 3, 2012) ...................................................................16

*In re Light Cigarettes Mktg. Sales Pracs. Litig.*,
271 F.R.D. 402 (D. Me. 2010) ................................................................................................28

*In re Nifedipine Antitrust Litig.*,
335 F. Supp. 2d 6 (D.D.C. 2004) .............................................................................................25

*Ingraham v. Wright*,
430 U.S. 651 (1977).................................................................................................................22

*Jensen v. Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) .......................................................................................30

*Kanam v. Haaland*,
2022 WL 2315552 (D.D.C. June 28, 2022), *aff'd*, 2023 WL 3063526 (D.C.
Cir. Apr. 25, 2023)...................................................................................................................12

*Keepers, Inc. v. City of Milford*,
807 F.3d 24 (2d Cir. 2015) ......................................................................................................23

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ......................................................................................9, 10, 19

*Lee v. Mondelez Int'l, Inc.*,
637 F. Supp. 3d 116 (S.D.N.Y. 2022)......................................................................................12

*Little v. SunTrust Bank*,
204 A.3d 1272 (D.C. 2019) .....................................................................................................23

*Lovelien v. United States*,
   422 F. Supp. 3d 341 (D.D.C. 2019) ...................................................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...............................................................................21, 24, 25, 26

*McNair v. Synapse Grp. Inc.*,
   672 F.3d 213 (3d Cir. 2012)....................................................................................25, 26

*Mills v. Giant of Md., LLC*,
   508 F.3d 11 (D.C. Cir. 2007) .................................................................................13, 18

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ..........................................................................................12

*Nat'l ATM Council, Inc. v. Visa Inc.*,
   922 F. Supp. 2d 73 (D.D.C. 2013) ...............................................................................18

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)......................................................................................................26

*Orshan v. Apple Inc.*,
   2018 WL 1510202 (N.D. Cal. Mar. 17, 2018)..............................................................13

*Pearson v. Chung*,
   961 A.2d 1067 (D.C. 2008) ...................................................................................10, 12

*Pelman v. McDonald's Corp.*,
   272 F.R.D. 82 (S.D.N.Y. 2010) ...................................................................................29

*Plesha v. Ferguson*,
   725 F. Supp. 2d 106 (D.D.C.2010) ..............................................................................19

*Plummer v. Safeway, Inc.*,
   934 F. Supp. 2d 191 (D.D.C. 2013) ............................................................................17

*Precision Cont. Sols., LP v. ANGI Homeservices, Inc.*,
   415 F. Supp. 3d 113 (D.D.C. 2019) .............................................................................21

*Richardson v. L'Oreal USA, Inc.*,
   991 F. Supp. 2d 181 (D.D.C. 2013) .............................................................................27

*Ritti v. U-Haul Int'l, Inc.*,
   2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ...............................................................29

*Salvador v. Allstate Prop. & Cas. Ins. Co.*,
   2020 WL 7042843 (D.D.C. Nov. 30, 2020) ...........................10, 16, 17, 18, 19, 25, 26, 27, 29

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................28

*Saucier v. Countrywide Home Loans*,
  64 A.3d 428 (D.C. 2013) ........................................................................11, 16, 19

*Stephens v. Farmers Rest. Grp.*,
  329 F.R.D. 476 (D.D.C. 2019)...........................................................................27

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)...........................................................................................26

*Turner v. Porsche Cars N. Am., Inc.*,
  2023 WL 8788754 (C.D. Cal. Dec. 19, 2023) ..................................................23

*United States ex rel. Joseph v. Cannon*,
  642 F.2d 1373 (D.C. Cir. 1981) ...........................................................................9

*Vila v. Inter–Am. Inv., Corp.*,
  570 F.3d 274 (D.C. Cir. 2009) ...........................................................................19

*Wheeler v. Panini Am., Inc.*,
  2022 WL 17039208 (D.D.C. Nov. 17, 2022) ......................................................31

*Whiting v. AARP*,
  701 F. Supp. 2d 21 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011).............10

*Woodford v. Yazam Inc.*,
  2023 WL 8083975 (D.D.C. Nov. 21, 2023) ........................................21, 22, 23, 25

*Yudzon v. Sage Title Grp., LLC*,
  2020 U.S. Dist. LEXIS 90295 (D.D.C. May 22, 2020) ....................................17, 19

## STATUTES & RULES

District of Columbia Code § 28-3904, *et seq*. ("CPPA") ............6, 10, 13-18, 20-21, 23, 28-29, 31

Fed. R. Civ. P. 9(b) ..................................................................................9, 10, 19

Fed. R. Civ. P. 12 ....................................................................................9, 21, 27

Fed. R. Civ. P. 23 .................................................................................26, 27, 30

## PRELIMINARY STATEMENT

Plaintiffs' counsel filed the Amended Complaint the day after he voluntarily dismissed his parallel lawsuit in the Eastern District of New York—*Fellows, et al. v. Ciccone, et al.*, No. 1:24-cv-00357-HG (E.D.N.Y.) (the "New York Action" or "*Fellows*")—with prejudice, and without any compensation from or any other form of settlement with defendants.

The New York Action involved nearly identical claims as Plaintiffs bring here. Like here, the New York plaintiffs alleged they were "deceived" by the "8:30 p.m." event time advertised for Madonna's Celebration Tour concerts because Madonna did not take the stage at 8:30 p.m., and the concerts ended later than plaintiffs allegedly expected. In that substantially similar suit, the New York district court recognized early in the case that "Defendants have made a strong showing that their forthcoming motion [to dismiss] will eliminate or narrow the claims in this case" (*Fellows*, March 4, 2024 Order) and, upon receipt of defendants' motion, issued a *sua sponte* order finding that the motion "identifies several likely legal deficiencies in the Complaint" (*id.*, April 8, 2024 Order). Shortly before his opposition to defendants' motion was due, Plaintiffs' counsel walked away from the case.

Like the New York Action, Plaintiffs' claims here are meritless and should be dismissed with prejudice. Plaintiffs' contention that the advertised "8:30 p.m." event time is deceptive suffers from several fatal deficiencies. In false advertising cases, courts consider how "reasonable consumers" would understand the advertising in question, including how the target audience's background knowledge and experiences would affect that understanding. *See* pp. 10-13, *infra*. And reasonable concertgoers—and certainly Madonna fans—do not expect the headline act at a major arena concert to take the stage at the ticketed event time. Rather, a reasonable concertgoer would understand that the venue's doors will open at or before the ticketed time, that one or more opening acts may perform before the headline act takes the stage, and that the headline act may take the

stage later in the evening. That is what happened here. At each concert, an opening act performed starting at or shortly after 8:30 p.m., and then after a set transition, Madonna took the stage. She performed for over two hours, past midnight, as she often does. Indeed, if Madonna had taken the stage at 8:30 p.m. sharp, many of her fans would have missed part of her show.

Notably, Plaintiffs do not and cannot point to any statements by Defendants indicating that Madonna herself would take the stage at 8:30 p.m. or that her performance would end by any particular time. That is because Defendants never made any such representations. To the contrary, Ticketmaster (who Plaintiffs say processed their concert ticket purchases) told concertgoers—and Plaintiffs expressly agreed in connection with their ticket purchase—that the concert's time was subject to change and that there could be an opening act of an unknown duration. The venue itself also told concertgoers prior to the concert that the "show will begin past the ticketed start time of 8:30 PM. Please plan your evening's travel and surrounding details accordingly."

Plaintiffs acknowledge that Madonna "has a consistent history over many years of starting her concerts over two hours late." AC ¶ 33. This alone belies their allegation that they expected Madonna to take the stage promptly at 8:30 p.m. Moreover, Plaintiffs' claimed injury—that they chose to leave the concerts early—is both implausible and illogical. Reasonable concertgoers know that concert lengths vary based on numerous factors, including for example the duration of the opening act, the amount of time needed for set changes, and the artist's set list for the night. So no matter when Plaintiffs expected Madonna to *start* performing, the 8:30 p.m. ticketed event time could not have reasonably conveyed anything to them about when her performance would *end*. Plaintiffs therefore fail to state any claim relating to the concerts' timing.

Plaintiffs' claims premised on their allegations that the venue was "uncomfortably hot" and that Madonna lip synched are also meritless. Plaintiffs do not claim Defendants made any

representations about the venue's temperature. Nor is being "hot" at a concert a cognizable injury. And Plaintiffs fail to plausibly plead *any* facts to support their conclusory assertion that Madonna lip synched some unidentified portions of the show. Even if there was any lip synching (there was not), and even if Plaintiffs could plausibly allege it (they have not), there is no cognizable injury to Plaintiffs. If a performer sang a few notes a little flat, or not loud enough for plaintiffs to hear, or was a little out of synch in a dance routine, would this constitute Article III injury sufficient to give rise to a legal claim? Of course not. The same is true of the alleged lip synching. For these reasons and others, Plaintiffs fail to plausibly allege that reasonable consumers were deceived or suffered any injury, and lack Article III standing. The Amended Complaint should be dismissed in its entirety with prejudice.

Beyond the Amended Complaint's substantive flaws, it is also improperly styled as a putative class action brought on behalf of anyone who bought a ticket or became a ticketholder for the concerts. This would include concertgoers who (i) did not buy their own tickets and never saw any ads for the concerts, (ii) knew or expected Madonna's performance would start and end later in the evening, (iii) did not leave the concerts early (unlike Plaintiffs), and (iv) had their expectations met or exceeded. Plaintiffs' own allegations confirm that they are not typical of the broad class of individuals they seek to represent, and determining whether any given putative class member was deceived, and if so how and to what extent, would necessarily involve individual assessments that cannot be made on a class-wide basis. And, while the Amended Complaint alleges that "no Class Member could afford to seek legal redress individually for the claims alleged herein" (AC ¶ 25), Plaintiffs' counsel has filed individual arbitrations and individual actions in small claims court based on substantially the same allegations, on behalf of individual consumers who attended Madonna concerts, including at Capital One Arena. Plaintiffs' class allegations are thus

false and implausible, and should be stricken.

## FACTUAL BACKGROUND

Madonna is a famous artist who has performed many concert tours over the years. AC ¶ 4. According to Plaintiffs, she "has a consistent history over many years of starting her concerts over two hours late[.]" *Id.* ¶ 33. Plaintiffs also alleged that Madonna's "late" starts and preference for an "uncomfortably hot" environment have been widely covered by the media, but "not all people who rely on advertising for the concerts know this." Complaint ¶¶ 17, 55.

All three Plaintiffs attended Madonna's December 2023 concerts at the Capital One Arena that were part of her recent "Celebration Tour." AC ¶¶ 9-11. Conoboy and Monte allege that they bought tickets directly from Ticketmaster. *Id.* ¶¶ 10-11. Halper-Asefi alleges that she bought tickets from StubHub and that her purchase was processed by Ticketmaster. *Id.* ¶¶ 9, 17, n.4. Live Nation, which is affiliated with Ticketmaster, was a defendant in this case until Plaintiffs deleted Live Nation from the Amended Complaint without explanation. Despite this, the Amended Complaint still cites Ticketmaster's Purchase Policy (*id.* ¶ 17, n.4), which governs Plaintiffs' ticket purchases along with the Ticketmaster Terms of Use referenced in the Purchase Policy.[1]

Plaintiffs allege that they were deceived by the "8:30 p.m." event time listed on "Defendants' advertisements" (AC ¶ 12), but do not identify any of those ads. Plaintiffs also say that the concert tickets themselves listed the event time (*id.*), but do not claim they saw or relied on their tickets *before* buying them.

---

[1]  *See* Warshafsky Decl., Exs. 1 & 2 ("This Purchase Policy applies to any purchases on our Site made on or after January 1, 2021. . . . Please also review our Terms of Use, which govern your use of our Site, and your purchase, possession, or use of any Live Nation or Ticketmaster tickets, products, or services."). Because the Amended Complaint cites and relies on these terms, the Court may consider them here. *See, e.g.*, *Halldorson v. Sandi Grp.*, 934 F. Supp. 2d 147, 152 (D.D.C. 2013); *BHC Interim Funding II, L.P. v. F.D.I.C.*, 851 F. Supp. 2d 131 n.2 (D.D.C. 2012).

Plaintiffs do not and cannot allege that Madonna's December 2023 concerts at the Capital One Arena failed to begin at or near the ticketed event time. Each concert had an opening act that began at or shortly after 8:30 p.m. Plaintiffs mischaracterize the opening act (a performance by DJ Mary Mac 5 Star followed by the emcee, Bob the Drag Queen) as "pre-recorded music" (*id.*, Introduction at 3), but do not and cannot allege that the opening act failed to start promptly. Consumers who attended Madonna's concerts, including Plaintiffs, expressly acknowledged that the concert may have one or more opening acts of an unknown duration. Warshafsky Decl., Ex. 1 § 9. It is also widely known that major arena concerts usually have opening acts.

Nevertheless, Plaintiffs now claim that they thought that "8:30 p.m." meant that *Madonna herself* would take the stage at that time. AC ¶ 13. According to Plaintiffs, some concertgoers (like them) chose to leave early and missed part of Madonna's performance, while others who stayed late may have incurred additional costs for transportation and babysitters. *Id.* Yet the Amended Complaint identifies no statements by Defendants about when Madonna would take the stage, how long the show would run, or when the concert would end. Plaintiffs cannot identify any such statements because Defendants made none. Defendants simply said the event would start at 8:30 p.m., which it did. Further, Plaintiffs and other concertgoers expressly acknowledged when they bought their concert tickets that concert start times are subject to change. Warshafsky Decl., Ex. 1 § 17.[2]

Plaintiffs also allege that the Capital One Arena was "uncomfortably hot" during the concert (AC ¶ 15), but do not identify any representations or promises by Defendants regarding the venue's temperature. Defendants made no such representations. Nor do Plaintiffs plead how

---

[2] Capital One Arena also told concertgoers before the concert that, "Due to the intricacies of the Madonna production, [the] show will begin past the ticketed start time of 8:30 PM. Please plan your evening's travel and surrounding details accordingly." Warshafsky Decl., Exs. 3-5.

hot the venue was or how, if at all, being "uncomfortable" injured them or anyone else at the concerts.

Plaintiffs also make contradictory and wholly conclusory assertions about alleged lip synching during the concerts. Plaintiffs inconsistently allege that Madonna lip synched "much of her performance" (AC, Introduction at 3), "some of her songs" (*id.* ¶ 15), and "some of her performance" (*id.* ¶ 33). They do not identify any songs during which Madonna allegedly lip synched, say how long she allegedly did this, or say what the basis is for this claim. Plaintiffs cannot make these allegations because Madonna sang live throughout the concerts.

Plaintiffs are suing Madonna and the Capital One Arena for false advertising pursuant to District of Columbia Code § 28-3904, *et seq.* ("CPPA"), promissory estoppel, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and civil conspiracy. Plaintiffs seek to represent a class of everyone who became a ticketholder for the two December 2023 Madonna concerts at the Capital One Arena, regardless of whether they purchased their own tickets, who they got their tickets from, or whether they saw any advertising for the concerts at all. AC ¶ 17. Plaintiffs claim they were injured because they left early (*id.*, Introduction at 2), although they do not say how much of the show they allegedly missed. Plaintiffs also allege that *other* concertgoers stayed the full show and suffered different forms of injury, such as increased transportation and babysitter costs. *Id.* ¶ 13. Plaintiffs do not explain how their claims are "typical" (*id.* ¶ 22) of the majority of concertgoers who stayed for the entire concert. Nor do they explain how they are typical of concertgoers who knew or did not care that Madonna would perform late into the evening—or even hoped that she would do so—and chose to buy tickets anyway. *See* Complaint ¶ 17.

Plaintiffs also allege that their counsel will adequately represent the putative class. AC
¶ 23. But as noted, this is not the first lawsuit Plaintiffs' counsel has filed against Madonna and
Live Nation. Before this action, Plaintiffs' counsel filed the New York Action, which made mirror-
image allegations about Madonna's Celebration Tour concerts at the Barclays Center. *See Fellows*,
ECF. No. 1.[3]

The New York plaintiffs voluntarily dismissed that case with prejudice without any
compensation or settlement. Before they did so, the New York court strongly signaled, repeatedly,
that it was inclined to dismiss the case on the merits. First, in granting defendants' request to stay
discovery, the court found that "Defendants have made a strong showing that their forthcoming
motion [to dismiss] will eliminate or narrow the claims in this case." *Fellows*, March 4, 2024
Order. And then, after defendants moved to dismiss, the court issued a *sua sponte* order finding
that the motion "identifies several likely legal deficiencies in the Complaint." *Id.*, April 8, 2024
Order. Plaintiffs then amended their pleading and defendants renewed their motion to dismiss.
With plaintiffs' opposition deadline approaching, plaintiffs' counsel filed a false "Notice of
Settlement" that sought to adjourn that deadline. *Id.*, ECF. No. 34. After a hearing, the court struck
that notice and maintained the existing briefing schedule. *Id.*, Minute Entry dated June 11, 2024.
Rather than oppose defendants' motion, plaintiffs then dismissed the case shortly before their
opposition deadline. *Id.*, ECF. No. 36.

The next day, Plaintiffs' counsel filed the Amended Complaint in this case. In the Amended
Complaint, Plaintiffs' counsel deleted numerous allegations from the original Complaint, which
also appeared in the New York complaint. These include allegations that defendants had explained

---

[3]  The Court can take judicial notice of the New York Action. *Brookens v. Solis*, 635 F. Supp. 2d
1, 6 (D.D.C. 2009), *aff'd*, 2009 WL 5125192 (D.C. Cir. Dec. 9, 2009).

in the New York Action belie the alleged claims. For example, the original Complaint alleged that Madonna's "late" concert starts have been the subject of "myriad articles in the media" and acknowledged that some Madonna fans therefore know this (but "not all"). Complaint ¶ 17. Likewise, the original Complaint alleged that there has been "significant media attention" regarding the hot temperature at Madonna's concerts. *Id.* ¶ 55. Those allegations (and others) contradict the assertion that concertgoers were deceived.[4]

Plaintiffs' counsel is also engaged in other vexatious efforts to increase Defendants' legal expenses. Those efforts include, among other things, filing small claims court cases and filing individual arbitrations on behalf of individual concertgoers. The individual arbitration claimants are consumers who went to the Capital One Arena concerts and who are putative class members according to the class definition in the Amended Complaint. Nevertheless, the Amended Complaint falsely alleges that a class action is superior to individual actions because "no Class Member could afford to seek legal redress individually for the claims alleged herein." AC ¶ 25. The Amended Complaint also alleges that "the Class Members' interests are best served by a class action rather than by individual actions." *Id.* These allegations are irreconcilable with the individual actions that Plaintiffs' counsel has threatened to bring and has brought on behalf of putative class members in this case.

---

[4] "[W]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendants['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true." *Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 171 (D.D.C. 2013) (alterations in original) (citation omitted), *aff'd*, 796 F.3d 1 (D.C. Cir. 2015).

## ARGUMENT

### I.   THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

#### A.   Legal Standard for Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint should be dismissed when a court is unable to infer more than the possibility of misconduct based on the pleaded facts. *Id.* at 678-79. Conclusory assertions are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681.

Further, where a claim sounds in fraud, the complaint must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). Rule 9(b), in other words, "requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (citations omitted).

#### B.   Plaintiffs Do Not and Cannot Plausibly Allege that Defendants Misrepresented When Madonna Would Take or Leave the Stage

Plaintiffs allege that Defendants misrepresented when Madonna's performances at the Capital One Arena would begin and end, resulting in concertgoers experiencing a later night out than they may have planned. But the sole alleged representation that the Amended Complaint identifies is the "8:30 p.m." event time. Plaintiffs do not identify the specific piece of advertising they allegedly saw and relied on. That failure to identify the allegedly false advertising at issue,

including its "time, place and content," fails to satisfy Rule 9(b), and this alone requires dismissal of their claims. *Kowal*, 16 F.3d at 1278; *see also Salvador v. Allstate Prop. & Cas. Ins. Co.*, 2020 WL 7042843, at *3 (D.D.C. Nov. 30, 2020) (dismissing false advertising claims where plaintiffs failed to identify what specific advertisements they saw).

Even beyond that fatal deficiency, Plaintiffs fail to plausibly allege that the ticketed event time would deceive a *reasonable* consumer, as is required under applicable D.C. law. Under the CPPA (as with similar statutes across the country), an allegedly unfair or deceptive practice "is properly considered in terms of how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008) (explaining that this position has "ample support" and collecting cases from across the country); *Whiting v. AARP*, 701 F. Supp. 2d 21, 30 (D.D.C. 2010), *aff'd*, 637 F.3d 355, 394 (D.C. Cir. 2011) ("none of the 'misrepresentations' that the plaintiff alleges are sufficient to establish a violation of the CPPA under the reasonable consumer standard"). Likewise, claims for fraudulent misrepresentation and negligent misrepresentation are evaluated under the reasonable consumer standard. *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 404 (D.D.C. 2020) ("Negligent misrepresentation requires reasonable reliance . . . and a fraudulent misrepresentation is not material if a reasonable person would not have relied on it" so "unreasonable reliance dooms" both claims). "Statements are not actionable if they are 'in fact either accurate, not misleading to a reasonable consumer, or mere puffery.'" *District of Columbia v. Facebook*, 2023 D.C. Super. Lexis 7, at *9 (D.C. Super. Ct. June 1, 2023) (citing *Whiting*, 701 F. Supp. 2d at 29).

A court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer. *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 256-57 (D.C. 2013) (holding "as a matter of law" that, by providing appellants with a ten-digit domestic-looking

telephone number for customer service, appellees did not "'use deceptive or representations or designations of geographic origin"); *Facebook*, 2023 D.C. Super. Lexis 7 (reasonable consumer could not have been misled as a matter of law in light of Facebook's disclosures in its terms of service and agreements). *See also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer"); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (quoting *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)) (affirming complaint's dismissal because reasonable consumers who are buying a $2 or $4 "grab-and-go" wrap from Dunkin' Donuts would not expect to receive an "unadulterated piece of meat").

A reasonable consumer would not be deceived in the manner that Plaintiffs allege. Plaintiffs' theory is that the "8:30 p.m." event time advertised by Defendants reasonably conveyed to concertgoers *both* that (1) Madonna herself would start performing then, and (2) Madonna would therefore end her show by some unspecified earlier time than it actually ended. This is utterly implausible in multiple respects.

Critically, Plaintiffs do not point to any statements by Defendants about when Madonna herself would take the stage or finish performing. The sole challenged statement here, the ticketed event time of 8:30 p.m., simply referred to the approximate time that the *event* would begin. Yet Plaintiffs do not claim that the venue was not open at the ticketed event time, that they were not allowed into the venue at that time, or that the event failed to start at or around the ticketed event time with an opening act. Indeed, the concerts in question had opening acts that began at or around 8:30 p.m. Thus, the ticketed event time was accurate. Plaintiffs cannot challenge this statement because "a reasonable consumer generally would not deem an accurate statement to be misleading . . . ." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013).

Plaintiffs' attempt to reinvent what Defendants' advertising said fails. The notation "8:30 p.m." alone on a concert ticket or advertisement says nothing about when Madonna herself will begin (never mind finish) performing. *See Pearson*, 961 A.2d at 1075 (rejecting plaintiff's argument that "Same Day Service" sign meant that same day service was always and automatically provided, and finding that such an interpretation "defies logic"); *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 133-35 (S.D.N.Y. 2022) (holding that when a chocolate bar label states "70% cacao," but the "label itself makes no representation about whether the cacao has been processed," it does not reasonably convey that the product is made with 70% *unprocessed* cacao).

Nor would it have been reasonable for a concertgoer to assume that the ticketed event time referred to when Madonna would take the stage. To start, Plaintiffs concede that Madonna "has a consistent history over many years of starting her concerts over two hours late." AC ¶ 33. Plaintiffs do not allege that this history is unknown to her fans. Indeed, they acknowledged that this history is well-publicized and known to at least some putative class members. Complaint ¶ 17.[5] The familiarity of Madonna's fans with her "consistent history" of "late" starts precludes Plaintiffs' theory of deception. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021) (affirming dismissal of false advertising claims about Manuka honey because "an average consumer of Manuka honey would likely know more than most about the production of the product" given that it is a "specialty product").

Even if a casual fan were not familiar with Madonna's "consistent history," they would need to disregard their life experiences and knowledge—including that major arena concerts

---

[5] Plaintiffs "may not plead facts in their amended complaint that contradict those in their original complaint." *Hourani*, 943 F. Supp. 2d at 171; *see also Kanam v. Haaland*, 2022 WL 2315552, at *5 (D.D.C. June 28, 2022), *aff'd*, 2023 WL 3063526 (D.C. Cir. Apr. 25, 2023) (denying leave to amend where amended complaint contradicted facts alleged in original complaint).

typically have opening acts—to think she would begin performing at 8:30 p.m. But *reasonable* consumers do not ignore such basic facts of life. *See, e.g.*, *Mills v. Giant of Md., LLC*, 508 F.3d 11, 15 (D.C. Cir. 2007) (Kavanaugh, J.) (affirming dismissal of putative class action alleging that milk label failed to disclose that some consumers may be intolerant of milk because "a reasonable consumer today would be well aware that milk may adversely affect some people"); *Orshan v. Apple Inc.*, 2018 WL 1510202 (N.D. Cal. Mar. 17, 2018) ("[A] reasonable consumer would expect that an iPhone and iPad would at least devote some storage space to iOS . . . and no reasonable consumer would have expected that all of the advertised storage capacity would be available for personal use."); *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 191 (E.D.N.Y. 2018) (dismissing claims that candy packaging was misleadingly underfilled because "consumers have come to expect at least some slack-fill").

For example, in *Floyd*, 70 A.3d 246, plaintiffs sued under the CPPA claiming that Bank of America's practice of routing customer phone calls placed to a domestic customer service number to an international call center was deceptive. The D.C. Court of Appeals affirmed dismissal of plaintiffs' claims because, among other reasons, "considering that the widespread corporate use of overseas call centers in today's global economy is both subject to frequent media coverage and fodder for nationally syndicated sitcoms and commercials, no consumer could have an objectively reasonable expectation that calling a toll-free or domestic customer service number provided by the bank necessarily entails speaking with a customer service representative in the United States." *Id.* at 256-57 (internal quotations omitted).

Just like consumers know that customer service call centers are often overseas, or that some people cannot tolerate milk, reasonable consumers and concertgoers know that headliners in major arena concerts rarely, if ever, take the stage at the ticketed event time. It is common knowledge

that concerts—and particularly major arena concerts by superstars like Madonna—have one or more opening acts, that transitions from one act to another can require set changes, and that the duration of an opening act can vary. Accordingly, absent an express statement that the headline act will take the stage at the ticketed event time, a reasonable consumer would not expect the headline act to take the stage then.

Moreover, concertgoers who bought their tickets from Ticketmaster and certain resellers were told—and affirmatively agreed—that the concert's "date *and time* are subject to change," that refunds are not guaranteed if an event is moved or rescheduled, and that there could be opening acts of an unknown duration. Warshafsky Declaration, Ex. 1 §§ 9-10, 17 (emphasis added). Plaintiffs concede they bought tickets from Ticketmaster or a reseller, and that Ticketmaster processed their purchases, so they agreed to these terms. *See* AC ¶¶ 9-11, n.4. In the face of these disclosures, a consumer could not *reasonably* think the event was guaranteed to begin at 8:30 p.m., let alone that Madonna would take the stage then. *See Druyan v. Jagger*, 508 F. Supp. 2d 288, 244 (S.D.N.Y. 2007) (holding that a reasonable consumer would not be misled into believing that a concert's date and time were guaranteed when the concert tickets and Ticketmaster's terms stated that date and time are subject to change); *Facebook*, 2023 D.C. Super. Lexis 7, at *10 (dismissing claims that Facebook violated the CPPA by misleadingly representing or omitting facts about sharing of user information because Facebook's terms of service and agreements "clearly and repeatedly made disclosures to users about its policies such that the reasonable user could not have been misled as a matter of law").

Plaintiffs make vague assertions about when sporting events and other concerts begin. AC, Introduction at 4. But experience attending sporting events (which are broadcast live on television) does nothing to inform consumers of when the headline act at a concert will take the stage. Nor do

Plaintiffs plead any facts about how concerts for other chart-topping artists are marketed or plead when other such artists take the stage relative to the advertised event time. *See id.*[6]

For all these reasons, Plaintiffs fail to plausibly allege that Defendants' advertisements reasonably conveyed that Madonna would start performing at 8:30 p.m. And as noted, that is only half the problem with Plaintiffs' claims based on the advertised event time. Plaintiffs' claimed injuries are predicated on the concert *ending* later than they had expected. *See* AC, Introduction at 2 (claiming that Plaintiffs chose to leave prior to concert's conclusion). Yet Plaintiffs do not point to *any* statements by Defendants about when Madonna's show would end. That is because Defendants never made any such statements. Nor do Plaintiffs make any allegations about what time a reasonable consumer would expect a Madonna concert to end.[7]

As a result, each of Plaintiffs' purported causes of action based on the ticketed event time fails as a matter of law. Their CPPA, fraudulent misrepresentation, and negligent misrepresentation claims fail because Plaintiffs cannot plausibly allege that the ticketed event time deceived

---

[6] While Plaintiffs make the conclusory assertion that Taylor Swift takes the stage at the ticketed event time, they plead no factual allegations in support. Such "naked assertions devoid of further factual enhancement" should not be credited. *Lovelien v. United States*, 422 F. Supp. 3d 341, 350 (D.D.C. 2019) (citation omitted). Plaintiffs' unsupported assertion is also flat wrong. *See* https://www.capitalfm.com/artists/taylor-swift/eras-tour-times-start-how-long-stage-when/ and https://www.setlist.fm/setlists/taylor-swift-3bd6bc5c.html (stating that Taylor Swift typically begins performing about 3.5 hours after the venue doors open, following an opening act).

[7] Unlike the Plaintiffs here, the plaintiffs in the New York Action tried to explain how the "8:30 p.m." ticketed event time might convey that the show would end before 11 p.m. Initially, they *falsely* alleged that the defendants represented the concerts would run two hours. *Fellows,* Complaint ¶ 13, ECF No. 1. After the defendants pointed out that they never made such a representation, plaintiffs withdrew that allegation, replacing it with an allegation that plaintiffs assumed the concert would run two hours and fifteen minutes from the ticketed event time because they were familiar with Madonna's performance history and how long her shows usually run. *Fellows*, Amended Complaint ¶ 12, ECF No. 27. But as defendants pointed out in their renewed motion to dismiss, that allegation confirmed the implausibility of plaintiffs' theory because any concertgoer who was familiar with Madonna's performance history would surely know that she has opening acts and does not take the stage at the ticketed event time.

reasonable consumers. Plaintiffs' promissory estoppel claim fails because Plaintiffs do not allege any promises by Defendants about when Madonna would take or leave the stage. *In re BHI Int'l, Inc.*, 2012 WL 4738747, at *1 (Bankr. D.D.C. Oct. 3, 2012) (dismissing promissory estoppel claim where there was no promise). The unjust enrichment claim fails for the same reason as the other claims: Plaintiffs cannot plausibly allege any misrepresentation that would render Defendants' enrichment "unjust." *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 29 (D.D.C. 2014) ("Under D.C. law, '[u]njust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another.'") (citation omitted). Finally, Plaintiffs' failure to plausibly allege any of their underlying tort claims dooms their civil conspiracy claim because "liability for civil conspiracy depends on performance of some underlying tortious act." *Saucier*, 64 A.3d at 446.

### C.    Plaintiffs Fail to State Omission-Based Claims Premised on Their Conclusory Assertions that the Venue was "Uncomfortably Hot" and that Madonna "Lip Synched"

Plaintiffs also base their claims (other than promissory estoppel) on their assertions that (1) the venue was "uncomfortably hot" during Madonna's concerts at the Capital One Arena, and (2) Madonna engaged in lip synching. AC ¶¶ 33, 49, 54, 59. Plaintiffs allege that Defendants failed to disclose these supposed facts. *See id.*

To state an omission-based claim under the CPPA, Plaintiffs must plausibly allege that the defendant failed to disclose a "material fact" and "such failure tends to mislead." *Salvador*, 2020 WL 7042843, at *2-3. "[A]n omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action." *Floyd*, 70 A.3d at 256 (citation omitted). To state a claim for negligent or fraudulent misrepresentation, Plaintiffs must plausibly allege with particularity, among other elements, that Defendants made a false omission of a material issue that Defendants had a duty to disclose, and that Plaintiffs

reasonably and to their detriment relied on the false information. *EAW Grp., Inc. v. Republic of Gam.*, 2005 U.S. Dist. LEXIS 56012, at *5 (D.D.C. June 6, 2005); *Yudzon v. Sage Title Grp., LLC*, 2020 U.S. Dist. LEXIS 90295, at *19 (D.D.C. May 22, 2020).

Plaintiffs do not plausibly allege that the supposed omissions here were material or tended to mislead. It is not enough to simply *assert* that some alleged omission was material and harmed consumers; Plaintiffs must back it up with *factual* allegations. *See Hackman v. Goya Foods*, 2018 D.C. Super. LEXIS 138 (D.C. Super. Ct. Oct. 2, 2018) (plaintiff failed to state plausible CPPA claims premised on alleged empty space in packaged rice because there were no allegations about how much empty space there was or how the volume of rice in the box differs from the weight stated on the package); *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 199 (D.D.C. 2013) ("Because Plummer asserts mere legal conclusions, rather than facts, he fails to state a claim for fraudulent misrepresentation."); *Burks Cos. v. Howard Univ.*, 2018 U.S. Dist. LEXIS 225203, at *26 (D.D.C. May 9, 2018) (dismissing negligent misrepresentation claim that was alleged in a "vague and conclusory manner").

For example, in *Salvador*, the plaintiffs alleged that Allstate failed to disclose information about its claim handling processing and policies. 2020 WL 7042843, at *3. But there were "no allegations about how plaintiffs responded to these purported omissions or what they would have done absent the alleged omissions." *Id.* Instead, the plaintiffs made "conclusory allegations of certain purported deficiencies in defendants' claims handling processes, without factual allegations to support how such failures tend to mislead consumers." *Id.* The Court dismissed the claim, finding that plaintiffs did not plausibly allege that "the alleged omissions were in fact misleading to anyone, much less a reasonable consumer." *Id.* (citation omitted).

It is the same here. Plaintiffs do not plead how hot the venue was, what temperature they (or reasonable consumers) expected the venue to be, or any basis for such an expectation. Nor do Plaintiffs allege how they "would have responded" had Defendants disclosed the anticipated temperature. *Salvador*, 2020 WL 7042843, at *3. Moreover, according to the initial Complaint, there has been "significant media attention" regarding the temperature at Madonna's concerts. Complaint ¶ 55. This allegation contradicts Plaintiffs' bare assertion that this information was unknown to Madonna's fans and that it was deceptive for Defendants not to disclose it. *See Mills*, 508 F.3d at 15 (reasonable consumers are aware of facts that receive significant media attention).

Similarly, Plaintiffs do not plead any facts to support their bare assertion that Madonna lip synched for some portion of the shows. They do not allege any facts about how much Madonna allegedly lip synched, never mind facts that tend to show the alleged amount of lip synching was material. Nor do Plaintiffs allege how they—erroneously—came to believe that Madonna was engaged in lip synching, which is another reason to reject this claim. *See Fahey v. Deoleo USA, Inc.*, 2018 WL 5840664 (D.D.C. Nov. 8, 2018) (dismissing plaintiff's CPPA claim alleging that olive oil was mislabeled because plaintiff failed to allege *facts* supporting an inference that the label statements were false). Plaintiffs cannot plead the requisite facts because Madonna sang live throughout the concerts. In addition, the allegations that Plaintiffs do make are internally contradictory assertions that Madonna lip synched "much of her performance" (AC, Introduction at 3), "some of her songs" (*id.* ¶ 15), and "some of her performance" (*id.* ¶ 33). These contradictions alone render Plaintiffs' claim implausible. *See Nat'l ATM Council, Inc. v. Visa Inc.*, 922 F. Supp. 2d 73, 87 (D.D.C. 2013) (finding plaintiff failed to state a claim where complaint included inconsistent allegations). As a result, Plaintiffs fail to plausibly allege that Defendants made any material omission of fact that tended to deceive reasonable consumers.

Plaintiffs' negligent and fraudulent misrepresentation claims also fail for two additional reasons. First, as noted, these claims must be premised on a special relationship that gives rise to a "duty to disclose." *See EAW Grp.*, 2005 U.S. Dist. LEXIS 56012, at *5; *Yudzon*, 2020 U.S. Dist. LEXIS 90295, at *19. Yet Plaintiffs do not allege any basis for such duty here.

Second, Plaintiffs' allegations of an "uncomfortably hot" venue and lip synching also fail to satisfy Rule 9(b) for the reasons explained above. *See Ekopel D.O.O. v. Citibank, N.A.*, 2024 WL 519648, at *10 (D.D.C. Feb. 9, 2024) ("generalized allegations regarding false statements . . . do not satisfy Rule 9(b)'s requirement to 'state with particularity the circumstances constituting fraud'") (citation omitted); *Anderson*, 221 F.R.D. at 255 (dismissing claim under Rule 9(b) when the plaintiff "advanc[ed] nothing more than what appears to be a blanket belief that the defendants as a group misrepresented or withheld material and significant facts") (internal quotation marks omitted). Moreover, Plaintiffs once again do not point to any specific advertising they allegedly saw and relied on in connection with these allegations, which alone requires dismissal of these claims. *See Kowal*, 16 F.3d at 1278; *Salvador*, 2020 WL 7042843, at *3. Accordingly, all of Plaintiffs' temperature- and lip synching-related claims fail, including their derivative unjust enrichment and civil conspiracy claims. *See Saucier*, 64 A.3d at 446.

### D.    Plaintiffs' Claims Also Fail for Other Independent Reasons

1.    *Plaintiffs' Unjust Enrichment and Promissory Estoppel Claims (Counts 2 and 3) Also Fail Because an Express Contract Governs*

Claims for unjust enrichment and promissory estoppel "presuppose that an express, enforceable contract is absent," so courts "generally prohibit litigants from asserting these claims when there is an express contract that governs the parties' conduct." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 112 (D.D.C.2010) (citing *Vila v. Inter–Am. Inv., Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009)). Plaintiffs may state such claims as an alternative to breach of contract, but only if there

is an "allegation that the contract is invalid or unenforceable." *He Depu v. Yahoo! Inc.*, 306 F. Supp. 3d 181, 193 (D.D.C. 2018) (collecting cases).

Plaintiffs initially asserted a breach of contract claim against Live Nation (which operates Ticketmaster). Complaint ¶¶ 5, 42-47. The Amended Complaint dropped Live Nation and that claim without explanation. But Plaintiffs cannot plead around the existence of their contract with Ticketmaster, nor do they (or could they) allege that their contract with Ticketmaster (*i.e.*, the Terms of Use and Purchase Policy) is invalid or unenforceable. On the contrary, Plaintiffs continue to acknowledge the existence of that contract and purport to rely on it for their amended claims. *See* AC ¶ 17(1), n.4 (citing Ticketmaster's Purchase Policy and claiming that Ticketmaster acts as "agent" to the "Event Organizers," which includes the artist and venue, in processing their concert ticket purchases). The Ticketmaster Terms of Use and Purchase Policy expressly provide that the concert's "date *and time* are subject to change," that refunds are not guaranteed if an event is moved or rescheduled, and that Ticketmaster is "not always made aware of Opening Acts or the length of their performances." Warshafsky Declaration, Ex. 1 §§ 9-10, 17 (emphasis added). Plaintiffs cannot successfully plead quasi-contractual claims against the Defendants given that an express contract governs. *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 25 (D.D.C. 2016) (dismissing quasi-contract claim against certain defendants, including those who were not original parties to the contract, because a contract between plaintiff and one defendant governed the dispute).

2.    *Plaintiffs' Civil Conspiracy Claim (Count 6) Also Fails for Other Reasons*

Plaintiffs rely on their underlying CPPA, promissory estoppel, unjust enrichment, and fraudulent misrepresentation claims for their conspiracy claim. AC ¶ 65. As a threshold matter, promissory estoppel and unjust enrichment are quasi-contractual claims and thus cannot support a conspiracy claim, and a CPPA claim cannot support a civil conspiracy claim either. *See Hill v.*

*Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007) (civil conspiracy "is not an independent tort but only a means for establishing vicarious liability for an underlying tort") (citation omitted); *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (rejecting civil conspiracy claim under CPPA and noting that "the District of Columbia Court of Appeals has expressed skepticism about statutory violations serving as 'underlying torts' for civil conspiracy claims where the statutory right at issue has no common law tort analogue"). In any event, Plaintiffs fail to state any underlying cause of action (in tort or otherwise), so their civil conspiracy claim likewise fails. *See Precision Cont. Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 126 (D.D.C. 2019).

## II.  THE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE PLAINTIFFS LACK ARTICLE III STANDING

### A.  Legal Standard for Motion to Dismiss for Lack of Article III Standing

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff must establish that he has suffered an injury-in-fact that is: (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the defendant's conduct, "meaning that 'there must be a causal connection between the injury and the conduct complained of'"; and (3) redressable by a favorable court decision. *See Woodford v. Yazam Inc.*, 2023 WL 8083975, at *4 (D.D.C. Nov. 21, 2023). The plaintiff bears the burden of demonstrating the Court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan, v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Therefore, while a complaint's factual allegations are accepted as true, the Court does "not assume the truth of legal conclusions, nor [ ] accept inferences that are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19. "Thus, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

**B.      Plaintiffs Fail to Plausibly Allege Any Cognizable Injury Traceable to the Asserted Claims**

Plaintiffs allege that they were deceived by the advertised 8:30 p.m. event time because Madonna took the stage approximately two hours later (after an opening act). But even taking these allegations at face value, courts have recognized that a delay in an event start time "of only a few hours was not a sufficient injury to invoke the protections of Article III of the Constitution." *Ford v. Reynolds*, 326 F. Supp. 2d 392, 401 (E.D.N.Y. 2004), *aff'd*, 167 F. App'x 248 (2d Cir. 2006). In *Ford*, the court cited the Supreme Court's acknowledgment that "[t]here is, of course a *de minimis* level of imposition with which the Constitution is not concerned" to find that student plaintiffs suffered no constitutional injury from an event beginning at 11:30 a.m. instead of the scheduled 9:00 a.m. start time, where the speakers were delayed between one hour and several hours in giving their speeches. *Id.* (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiffs attempt to circumvent this fatal and incurable deficiency by alleging that they "had to leave the concerts early prior to the concerts' conclusion, therefore depriving each of them of the benefit of seeing the complete concert." AC, Introduction at 2. But the Amended Complaint does not allege what time Plaintiffs left the concerts, and whether it was two minutes before the end or an hour. At any rate, even if they missed more than a *de minimis* portion of the concert (a fact that Plaintiffs must plead and should not be assumed), that purported injury arose out of Plaintiffs' unexplained and illogical expectation that the concerts would *end* by some particular time. But that supposed expectation is not "plausibly alleged to be causally connected to the legal claim asserted," namely Plaintiffs' allegation that Defendants falsely advertised the concerts as *beginning* at 8:30 p.m. *Woodford*, 2023 WL 8083975, at *4. As discussed above, Plaintiffs do not identify *any* misrepresentations made by Defendants about when the concerts would end.

Plaintiffs' allegations that they had to leave the concerts early as a result of Defendants' conduct is especially implausible given that (1) Plaintiffs were told, and agreed, before buying their concert tickets that the event time was subject to change and that the headline act might be preceded by opening acts of unknown length (Warshafsky Decl., Ex. 1, § 9); and (2) Capital One Arena told concertgoers before the concert "that the show may run past when the last train is expected to leave the Gallery Place station" (*i.e.*, after midnight) and to "Please plan your evening's travel and surrounding details accordingly" (Warshafsky Decl., Exs. 3-5). Plaintiffs nonetheless apparently *chose* not to make arrangements to stay for the entire concert in the face of these notices, and in the absence of any other representation as to what time the concerts would end. That is simply not a cognizable injury fairly traceable to the complained of conduct. *See Woodford*, 2023 WL 8083975, at *5-6 (no standing where plaintiff's physical, emotional, and monetary damages were not traceable to the alleged misrepresentations at issue); *Little v. SunTrust Bank*, 204 A.3d 1272, 1273–75 (D.C. 2019) (plaintiffs failed to show standing to bring CPPA counterclaim against trustee where their alleged injury in the form of attorney's fees incurred in defending against trustee's lawsuit was not "fairly traceable" to any misrepresentation made by trustee).

With respect to Plaintiffs' allegations that the arena was "uncomfortably hot" (AC ¶ 15), courts have similarly recognized that simply being made to endure "uncomfortable" temperatures is not a cognizable injury sufficient to confer Article III standing. *See Turner v. Porsche Cars N. Am., Inc.*, 2023 WL 8788754, at *6 (C.D. Cal. Dec. 19, 2023) (allegation that vehicle's heating system stopped working and plaintiff was "'uncomfortable' when driving in the cold winter months" was insufficient to confer standing); *see also Keepers, Inc. v. City of Milford*, 807 F.3d 24, 43 (2d Cir. 2015) ("[M]ere discomfort, . . . no matter how sharply felt, is insufficient to confer standing.").

As noted, Plaintiffs' remaining allegations that Madonna lip synched are wholly unsupported. Regardless, the alleged lip synching would not constitute a concrete and cognizable Article III injury. If a performer misses a note or a cue, that may lead to some fleeting disappointment, but not a legally cognizable injury.

### C.   Plaintiffs Fail to Plausibly Allege Any Injury Caused by the Remaining Defendants

For Plaintiffs to have Article III standing, their purported injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61. Plaintiffs in their original Complaint named two Live Nation entities—Live Nation Worldwide, Inc. and Live Nation MTours (USA), Inc.—as defendants. Plaintiffs alleged that Live Nation participated in the allegedly deceptive conduct as Madonna's "promoter," that Live Nation owns Ticketmaster where two of the named Plaintiffs bought their tickets and which processed the ticket sale of the third named Plaintiff, that each of the named Defendants (including the Live Nation entities) made the misrepresentations and omissions at issue, that each of the Plaintiffs bought their tickets "in reliance of Defendants' advertisements for the concerts" (including the advertisements of the Live Nation defendants), and that "the deceptive acts and practices of Defendants [including the Live Nation defendants] . . . caused damages and injury to Plaintiffs and the other Class Members." Complaint at 2-3; *id.* ¶¶ 11-14, 16, 38, 55-57.

The Amended Complaint dropped the Live Nation parties, and Plaintiffs now allege that they "purchased their tickets in reliance" on the advertisements of the remaining Defendants, Madonna and the owner of Capital One Arena, Lincoln Holdings, and that it was the allegedly deceptive acts and practices of *those* remaining Defendants that injured Plaintiffs and the other putative class members. AC ¶¶ 5, 12, 34. But the Amended Complaint fails to identify any such

advertising by these remaining defendants and fails to plausibly allege any facts to support an allegation that Plaintiffs even saw, much less relied on or were injured by, any advertising by those remaining Defendants. At any rate, as discussed, Plaintiffs "may not plead facts in their amended complaint that contradict those in their original complaint." *Hourani*, 943 F. Supp. 2d at 171.

Plaintiffs allege that they saw, relied on, and were injured by advertising by Live Nation, including in their original Complaint and in the Amended Complaint where they assert that Plaintiffs bought their tickets from Ticketmaster and StubHub (AC ¶¶ 9-11), and thus necessarily saw those third parties' advertising for the concerts, including the advertised 8:30 p.m. event time. But Live Nation is no longer a named defendant (and StubHub never was), so Live Nation is now a "third party not before the court." *Lujan*, 504 U.S. at 560-61. Plaintiffs therefore cannot show that the remaining defendants' alleged misrepresentations or omissions "are a but-for cause of [their] injuries. . . . This flunks the standing test." *Woodford*, 2023 WL 8083975, at *5-6. *See also Salvador*, 2020 WL 7042843, at *4 ("In a multi-defendant action or class action, the [named] plaintiffs must establish that they have been harmed by each of the defendants"; dismissing all claims against defendants who were not responsible for the allegedly misleading advertising).

### D.    Plaintiffs Lack Standing to Seek Injunctive Relief

Plaintiffs' request for injunctive relief also independently fails because they lack standing to seek injunctive relief. To have standing to seek injunctive relief, Plaintiffs must show a likelihood of *future* injury. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (past injuries alone are insufficient to establish standing for injunctive relief); *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 19 (D.D.C. 2004) ("In the context of injunctive relief, however, lingering monetary injury, without any ongoing threat of recurrent violations [to the plaintiffs], is not sufficient to confer standing to seek an injunction."). The threat of injury must be "sufficiently real and immediate." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citation omitted).

Moreover, in the class action context, named plaintiffs must show that they themselves are likely to suffer future injury from the defendants' conduct and cannot establish standing by relying on the likelihood of future injury to absent class members. *Id.*; *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Plaintiffs here do not meet that requirement. They do not allege that they plan to attend another Madonna concert in future. That alone warrants dismissal of their request for injunctive relief. *Lujan*, 504 U.S. at 563–64 (no standing for plaintiff with no current plans to return to site of alleged injury). Nor do Plaintiffs allege that Madonna has any forthcoming tour dates or other performances at Capital One Arena (she does not), or any other form of real or immediate likelihood of future injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("'[S]ome day' intentions – without any description of concrete plans, or indeed even speculation of *when* some day will be – do not support a finding of the 'actual or imminent' injury that our cases require.") (citation omitted). Having thus failed to allege *any* likelihood of future injury, Plaintiffs' request for injunctive relief should be dismissed.

**III.    IF ANY PART OF THE AMENDED COMPLAINT SURVIVES, THE COURT SHOULD STRIKE ITS CLASS ALLEGATIONS**

**A.    Legal Standard for Motion to Strike Class Allegations**

"Courts have broad discretion in determining whether to permit a case to proceed as a class action, and a defendant may move to strike class action allegations at any time, including at the pleadings stage." *See Salvador*, 2020 WL 7042843, at *4. "In determining the propriety of a class action, the central question is whether the requirements of Federal Rule of Civil Procedure 23 are met." *Id.*; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (to maintain a class action, plaintiffs "must affirmatively demonstrate . . . compliance with Rule 23") (citation omitted). All four requirements of Rule 23(a), and one of the three categories of Rule 23(b), must be met.

*Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 195 (D.D.C. 2013).

A motion to strike pursuant to Rule 12(f) may be granted where certification requirements cannot be met. *See, e.g., Salvador*, 2020 WL 7042843, at *5 (striking class allegations that were "fatally deficient" because "individualized issues will necessarily predominate"); *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 10 (D.D.C. 2015) (striking class allegations because the named plaintiff could not meet the "typicality" requirement). As the Supreme Court has observed, "sometimes the issues are plain enough from the pleadings to determine whether" class treatment is appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). That is the case here.

**B.     The Amended Complaint's Class Allegations Should be Stricken Because the Proposed Class Could Never be Certified**

Plaintiffs seek to certify a class under Rule 23(a) and (b)(3) on behalf of all individuals throughout the United States who purchased a ticket or became a ticketholder to a Celebration Tour concert at the Capital One Arena, including those who purchased from Ticketmaster, ticket resellers, or the venue's box office. AC ¶ 17(1)-(3). The proposed class could never be certified for numerous reasons.

To start, a class may not be certified where it appears to sweep in members who lack Article III standing. *See Attias v. CareFirst, Inc.*, 344 F.R.D. 38, 52 (D.D.C. 2023); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("no class may be certified that contains members lacking Article III standing," so a proposed class "must therefore be defined in such a way that anyone within it would have standing."). The proposed class here violates this requirement because it includes:

- Concertgoers who never saw or relied on any advertising by the current Defendants, including ticketholders who did not purchase their own tickets or

purchased from ticket resellers;

- Concertgoers who bought their tickets knowing that Madonna would not take the stage at the ticketed event time, including because they were familiar with her "consistent history" of starting concerts after the ticketed event time (AC ¶ 33), or because they understood in general that headliners at major arena concerts do not take the stage at the ticketed event time;

- Concertgoers who did not leave the concerts early;

- Concertgoers who were satisfied with the temperature of the venue and were not "uncomfortable";

- Concertgoers for whom the alleged misrepresentations and omissions were not material, and who would have bought their tickets to see Madonna perform regardless; and

- Concertgoers who were fully satisfied with their concert experience and had all their expectations met or exceeded.

The proposed class is therefore replete with concertgoers who plainly were not deceived or injured. This warrants striking the Amended Complaint's class allegations. *See, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations for class defined as all owners of 20–inch Aluminum iMac computers because "no class may be certified that contains members lacking Article III standing," which would include members who "suffered no damages") (citation omitted). *See also In re Light Cigarettes Mktg. Sales Pracs. Litig.,* 271 F.R.D. 402 (D. Me. 2010) (declining to certify class for CPPA claim where proposed class definition included everyone who bought a product because this included people who were not deceived by defendants).

Nor can Plaintiffs redefine the class to somehow limit it to a segment who were deceived or injured. Whether any putative class member was deceived or injured would depend on highly individualized inquires including: (i) the consumer's pre-purchase knowledge regarding Madonna's performance history, (ii) what advertisements or representations, if any, each consumer saw and relied on (including any relevant disclosure language), (iii) what terms of use or other contractual language each consumer agreed to, (iv) when each consumer wanted or expected

Madonna to take the stage and end her show, and (v) each consumer's individual expectations about the venue's temperature and Madonna's performance. These individualized issues would "overwhelm" any common questions such that the claims are "not appropriate for class certification." *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 94-95 (S.D.N.Y. 2010) (citation omitted). *See also Salvador*, 2020 WL 7042843, at *5 (individual issues predominate CPPA claim alleging misrepresentation where "plaintiffs make vague allegations about defendants' 'advertising campaign,' but point to no specific advertisement or public pronouncement by defendants that was seen by all putative class members").[8]

To represent any putative class, Plaintiffs also must plausibly allege, and ultimately show, that their claims are "typical" of the class members' claims. *Abdul-Baaqiy*, 149 F. Supp. 3d at 11 ("Because Plaintiff has failed to meet the typicality requirement, his class action claims will be stricken . . . ."). But Plaintiffs, who all claim they left the concert early, make no effort to explain how their claims are typical of concertgoers who stayed for the entire show. Nor do they explain how they are typical of concertgoers who expected Madonna to take the stage later than the ticketed event time and were entirely satisfied with their concert experience. Moreover, Plaintiffs allege they bought their tickets from Ticketmaster or StubHub, yet purport to represent class members who bought tickets from other ticket resellers and who may have agreed to additional or different terms regarding their ticket purchases and viewed different representations (from their sellers)

---

[8] Similarly, any damages calculations would require extensive, individualized determinations, including individualized proof and calculation of how early each concertgoer left the concert and what monetary value that corresponds to, and of any other consequential damages they each claim, such as the "additional costs for babysitters" or transportation alluded to in the Amended Complaint. AC ¶ 15; *see Ritti v. U-Haul Int'l, Inc.*, 2006 WL 1117878, at *12 (E.D. Pa. Apr. 26, 2006) (individual damages issues such as calculation of consequential damages requiring individualized proof and calculation "underscore the inadvisability of certification here").

regarding the concerts.[9] Plaintiffs simply cannot be "typical" of all the putative class members.

Finally, Plaintiffs try to plead the superiority requirements of Fed. R. Civ. P. 23(b)(3) by alleging that "no Class Member could afford to seek legal redress individually for the claims alleged herein" and "even if Class Members themselves could afford such individual litigation, the court system could not." AC ¶ 25. Despite these allegations and his assertion to this Court that "individualized litigation would significantly increase the delay and expense to all parties and to the Court" (*id.*), Plaintiffs' counsel has filed multiple individual arbitrations and small claims court cases against Madonna and her concert venues (including Capital One Arena), based on substantially the same allegations as in this case. These individual actions directly contradict Plaintiffs' allegations that "no Class Member could afford to seek legal redress individually for the claims alleged herein." *Id.*[10]

---

[9] For example, concertgoers who purchased tickets processed by Ticketmaster, including Plaintiffs, agreed to a "Limitation of Liability" clause that expressly waives their ability to seek, among other things, consequential damages from Live Nation, event organizers (*including artists and venues*), and others, in connection with tickets purchased from Ticketmaster. Warshafsky Decl., Ex. 2 ¶ 15. *See also Druyan*, 508 F. Supp. 2d at 238 (enforcing limitation of liability clause in a prior version of Ticketmaster's Terms of Use). The Ticketmaster Terms of Use and Purchase Policy also require informal dispute resolution as a predicate to arbitration and prohibit class-wide litigation. *Id.* By filing this lawsuit, the named Plaintiffs breached that agreement. Defendants have chosen not to compel informal dispute resolution and arbitration, but *only* as to the three named Plaintiffs. Defendants reserve all rights with respect to informal dispute resolution, arbitration, and the class waiver with respect to all absent class members in connection with the Ticketmaster Terms of Use and Purchase Policy and any other applicable agreements. *See Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1237 (11th Cir. 2018). This means that the three named Plaintiffs are in a unique position from the majority of class members who are unable to participate in class litigation, such that Plaintiffs could never be found to be typical or adequate representatives of the putative class. *See Abdul-Baaqiy*, 149 F. Supp. 3d at 10; *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 122-25 (E.D.N.Y. 2019).

[10] The Amended Complaint also does not explain how Plaintiffs and their counsel can be adequate representatives for a class of consumers that includes individuals who Plaintiffs' counsel elsewhere asserts are subject to a binding arbitration agreement.

In sum, it is clear from the Amended Complaint that no class could be certified here, and certainly not the class that Plaintiffs are proposing. If the Court does not dismiss this case outright, it should therefore strike the Amended Complaint's class allegations.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Amended Complaint be dismissed in full and with prejudice. Together with the New York Action, Plaintiffs' counsel has now forced Madonna, Live Nation, and their venue partners to file three motions to dismiss in response to four pleadings, including two in this case. Plaintiffs simply cannot state a claim for relief, and Defendants should not be forced to go through this exercise again given the futility of any further amendment. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) ("A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss.") (citation omitted); *Wheeler v. Panini Am., Inc.*, 2022 WL 17039208, at *8 (D.D.C. Nov. 17, 2022) (denying leave to amend CPPA claim where there was "no world" in which plaintiff could "satisfy Article III standing for her claims for damages because . . . her purported injury is too abstract . . . .").

Dated:      July 22, 2024

*/s/ Erica Taylor Jones*
Erica Taylor Jones
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW STE 600,
Washington, DC 20004
Telephone: 202.416.6861
ejones@proskauer.com

Sandra A. Crawshaw-Sparks*
David A. Munkittrick*
Jeffrey H. Warshafsky*
Q. Jennifer Yang*
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3915
scrawshaw@proskauer.com

dmunkittrick@proskauer.com
jwarshafsky@proskauer.com
jyang@proskauer.com

*Attorneys for Defendants*
*\*Pro hac vice application forthcoming*